Report: CZRT_26 v18.0

**21ST JUDICIAL CIRCUIT**
**ST LOUIS COUNTY**
**CIRCUIT COURT DOCKET SHEET**

Date: 20-Sep-2022
Time: 10:47:42AM
Page: 1

| 22SL-CC03953 | CATHERINE HON ET AL V CENTENE CORPORATION ET AL | Security Level: 1 Public |
|---|---|---|

| | | | |
|---|---|---|---|
| Case Type: | CC Other Tort | | |
| Status: | Pet Filed in Circuit Ct | **Case Filing Date:** | 07-Sep-2022 |
| Disposition: | | **Disposition Date:** | |

| | | Release/Status Change Date | Reason |
|---|---|---|---|
| Judge | **BRIAN H MAY (39694)** | | |
| Plaintiff | **CATHERINE HON (@2191365)** | | |
| REPRESENTED BY: | | | |
| Attorney for Plaintiff | LINUS L BAKER (44980) | | |
| ALSO REPRESENTING: | | | |
| Plaintiff | ANDREW DIETRICH (@2191374) | | |
| Defendant | **CENTENE CORPORATION (@2191368)** | | |
| Defendant | **UNKNOWN ABSENCE MANAGEMENT (@2191369)** | | |
| Defendant | **INDIVIDUAL #2 UNKNOWN (@2191370)** | | |

| Filing Date | Description |
|---|---|
| 07-Sep-2022 | **Judge Assigned** |
| | DIV 1 |
| | **Pet Filed in Circuit Ct** |
| | Petition. |
| | **Filed By:** LINUS L BAKER |
| | **On Behalf Of:** CATHERINE HON, ANDREW DIETRICH |
| | **Filing Info Sheet eFiling** |
| | **Filed By:** LINUS L BAKER |
| | **Judge/Clerk - Note** |
| | NO SUMMONS ISSUED DUE TO MISSING $36 SHERIFF'S SERVICE FEES OR A SPECIAL PROCESS SERVER FORM. E-FILE A MEMO WITH THE REMAINING $36 FEES OR A SPECIAL PROCESS SERVER FORM SO THE SUMMONS CAN BE ISSUED. IF USING A SPECIAL PROCESS SERVER, Per Local Rule 28 (E), you must submit the "Request for Appointment of Process Server" form, which can be found on the St. Louis County Court's Web Site. ONCE THE FEES OR SPS FORM IS E-FILED, CONTACT THE CLERK AT 314-615-3470. |
| | **Judge/Clerk - Note** |
| | THIS CASE CANNOT BE FURTHER PROCESSED TO THE PETITON LISTING THE INCORRECT JUDICIAL DIVISION. THE PETITION STATES THE "22ND JUDICIAL DISTRICT" AND THE ST LOUIS COUNTY CIRCUIT-COURT IS THE 21ST JUDICIAL DISTRICT. PLEASE E-FILE AN AMENDED PETITION STATING THE 21ST JUDICIAL DISTRICT SO THE CASE CAN BE FURTHER PROCESSED. |
| | **Amended Motion/Petition Filed** |
| | Amended Petition. |
| | **Filed By:** LINUS L BAKER |
| | **On Behalf Of:** CATHERINE HON, ANDREW DIETRICH |
| | **Request Filed** |
| | Request for Service. |
| | **Filed By:** LINUS L BAKER |
| | **On Behalf Of:** CATHERINE HON, ANDREW DIETRICH |
| | **Note to Clerk eFiling** |
| | **Filed By:** LINUS L BAKER |
| 09-Sep-2022 | **Summons Issued-Circuit** |
| | Document ID: 22-SMCC-7472, for CENTENE CORPORATION. Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service. |
| | **Service/Attempt Date:** 16-Sep-2022 |
| 20-Sep-2022 | **Request for Records Filed** |

**EXHIBIT A**

Report: CZR0 v18.0

**21ST JUDICIAL CIRCUIT**
**ST LOUIS COUNTY**
**CIRCUIT COURT DOCKET SHEET**

Date:  20-Sep-2022
Time:  10:47:42AM
Page:  2

Case continued from previous page.

**22SL-CC03953**        **CATHERINE HON ET AL V CENTENE**          **Security Level: 1 Public**
                        **CORPORATION ET AL**

Attorney Elizabeth Stevenson Request for Certified Copies of the Entire case file.



Littler Mendelson, P.C.
600 Washington Avenue
Suite 900
St. Louis, MO  63101

Elizabeth Stevenson
314.659.2024 direct
314.659.2000 main
lastevenson@littler.com

**FILED**

SEP 2 0 2022

JOAN M. GILMER
CIRCUIT CLERK, ST LOUIS COUNTY

September 19, 2022

**VIA FACSIMILE (314-615-8739)**

St. Louis County Circuit Court
***Attn: Certified Copies***
105 S. Central
Clayton, MO 63105

Re:     Request for Certified Copy of Court File – 22SL-CC03953

Dear Madam or Sir:

This firm represents Centene Management Company, LLC, incorrectly named as Centene Corporation in the lawsuit *Catherine Hon, et al. vs. Centene Corporation, et al.*, No. 22SL-CC03953, which was filed on September 7, 2022. I am writing to request a certified copy of the entire case file for this matter.  A copy of the docket is attached hereto.

Please contact my paralegal, Tracy Chamberlain at (816) 384-5699 or tchamberlain@littler.com when the copies are ready for pick-up. I would appreciate any assistance in expediting this request.

Thank you for your assistance in this matter and please do not hesitate to contact us with any questions.

Sincerely,


/s/ Elizabeth A. Stevenson


LAS/tjc

littler.com



# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>BRIAN H MAY | Case Number: 22SL-CC03953 |
| Plaintiff/Petitioner:<br>CATHERINE HON<br><div align="right">vs.</div> | Plaintiff's/Petitioner's Attorney/Address<br>LINUS L. BAKER<br>6732 WEST 185TH TERRACE<br>STILWELL, KS  66085-8922 |
| Defendant/Respondent:<br>CENTENE CORPORATION | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Other Tort | |

**SHERIFF FEE PAID**

(Date File Stamp)

## Summons in Civil Case

The State of Missouri to:  CENTENE CORPORATION
Alias:

SERVE CT CORPORATION SYSTEM
120 SOUTH CENTRAL AVE
CLAYTON, MO 63105



COURT SEAL OF

ST. LOUIS COUNTY

      You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service.  If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

      SPECIAL NEEDS:  If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.

<u>09-SEP-2022</u>
Date

_____
Clerk

Further Information:
AD

### Sheriff's or Server's Return

Note to serving officer:  Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by:  (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).

☐ other _____

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server                    Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____          _____
Date                                                            Notary Public

**Sheriff's Fees, if applicable**

| | | |
|---|---|---|
| Summons | $ _____ | |
| Non Est | $ _____ | |
| Sheriff's Deputy Salary | | |
| Supplemental Surcharge | $ ____10.00____ | |
| Mileage | $ _____ | ( _____ miles @ $._____ per mile) |
| **Total** | $ _____ | |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent.  For methods of service on all classes of suits, see Supreme Court Rule 54.

# THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

### Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

### Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

### Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Ave., 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73

**22SL-CC03953**

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**22ND JUDICIAL DISTRICT**
**STATE OF MISSOURI**

| | |
|---|---|
| Catherine A. B. Hon<br>*<br>Andrew H. Dietrich<br><br>　　　　　　　Plaintiffs<br><br>v.<br><br>Centene Corporation<br>Serve Registered Agent:<br>C T Corporation System<br>120 South Central Ave<br>Clayton, MO 63105<br>*<br>Unknown Individual Titled "Absence Management"<br>*<br>Unknown Individual 2<br><br>　　　　　　　Defendants | No:<br><br>JURY TRIAL DEMANDED |

**Petition**

COMES NOW Plaintiff Catherine Hon and Andrew Dietrich, pursuant to Missouri Supreme Court Rules 53.01 and 55 and RSMo § 213.111, to allege the following against each Defendant in support of their respective claims for relief.

**INTRODUCTION**

1. In October of 2021, Centene Corporation (Centene) published a *quid pro quo* condition for the continued employment all of its employees: consent to multiple experimental[1] mRNA novelty drugs called "Covid-19 vaccine" injections or else be subject to employee discipline and termination. Centene would not impose the condition if Centene approved a medical or religious exemption request by the employee.

---

[1] At the end of 2020 and beginning of 2021, the Food and Drug Administration (FDA) approved three vaccines pursuant to the federal Emergency Use Authorization (EUA) statute, 21 U.S.C. § 360bbb-3: the Pfizer BioNTech, Moderna, and Johnson & Johnson (Janssen) vaccines. Products granted an EUA, by definition, have not yet been proven safe and effective.

**1**

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

2. There are many facts related to these mRNA vaccines: they don't stay at the injection site by instead travel throughout the body and accumulate in various organs; mRNA-based COVID vaccines induce long-lasting expression of the SARS-CoV-2 spike protein in many organs; vaccine-induced expression of the spike protein induces autoimmune-like inflammation; and vaccine-induced inflammation can cause grave organ damage, especially in vessels, sometimes with deadly outcome.

3. Putting all of that aside, they were tested using aborted fetal cells, something that Catie Hon's and Andrew Dietrich's religious convictions find repugnant.

4. After Catherine was terminated she filed an EEOC charge against Centene. Centene responded claiming that "Centene had legitimate, non-discriminatory reasons for its actions. Namely, it implemented the Policy and accommodation process to mitigate the spread of COVID-19 and to protect its employees (and the community at large)."

5. Yet just before Centene published its modified Covid-19 policy to require Covid-19 vaccine injections on October 11, 2021, the U.S. Centers for Disease Control and Prevention ("CDC") Director, Dr. Rochelle Walensky, stated on October 8, 2021, about COVID-19 vaccines that the vaccines never prevented transmission: "what they cannot do any more is prevent transmission."[2]

6. The process Centene created was theatre and pretext. Neither plaintiff, who were remotely working employees of Centene, never received a fair and particularized evaluation "to the person." Instead, in response to the many religious accommodation requests and appeals, in denying those requests and appeals Centene relied on an almost-identical verbiage, a template, a form rejection.

7. Centene's policy was intended and designed to coerce each employee into surrendering their respective rights to bodily autonomy, informed consent,  and to refuse medical treatment. The mandate did so by threatening the employee's livelihood.

8. Each plaintiff has a federal statutory right to decline administration of an experimental pharmaceutical approved only for emergency use. *See* 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III). Federal law allows the plaintiff to make that choice based on their perception of the likely medical consequences alone.

9. There was no claim by Centene that a plaintiff consenting to multiple COVID-19 vaccine injections was, in any way, related to a plaintiff's job duties.

---

[2]   CDC Director, Dr. Rochelle Walensky, Oct. 8, 2021, available at: https://youtu.be/swlUv2SbmT8.

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

10. Centene's vaccine policy flies in the face of federal law, which explicitly eschews forcing people to take products authorized for emergency use only (EUA products). *See* 21 U.S.C. § 360bbb-3. On its face, the statute vests the decision of whether to take an unapproved drug with the person who is advised to take it and gives such a person an unfettered option to withhold informed consent and refuse the medication.

11. Centene's mandate vitiates this statutory right. By predicating continued employment on consenting to injecting EUA vaccines, Centene's mandate impedes the purpose and intent of the governing statute, and it is therefore intrinsically irrational.

12. The mandate explicitly and categorically refused to consider immunity acquired through prior infection as a substitute for vaccination. Those who declined to consent to the vaccine injections were subject to discipline, including termination from employment.

13. Andy contracted Covid in February 2020. Catherine had contracted Covid in the fall of 2021. But in doing so both Andy and Catherine developed natural immunities, a much better and long-lasting immunity than that generated by a vaccine. Natural immunity confers longer lasting and stronger protection against infection, symptomatic disease and hospitalization caused by the Delta variant of SARS-CoV-2, compared to the BNT162b2 two-dose vaccine-induced immunity.[3]

14. The scientific knowledge at that time rendered Centene's vaccine mandate irrational for many reasons: one of which it failed to exempt the naturally immune.

15. Unlike other companies associated with providing medical and hospital services, and contrary to its obligations under Title VII, Centene established a religious exemption review process which failed to individually and properly assess each application for religious exemption including each plaintiff.

16. Instead, Centene predetermined by a percentage and then established a coercive process calculated to coerce or otherwise force Centene employees to abandon their religious objections by consenting to Covid-19 vaccine injections against those sincere religious convictions.

---

[3] *See* David Rosenberg, Natural Infection vs. Vaccination: Which Gives More Protection?, ISRAELNATIONALNEWS.COM (July 13, 2021), available at https://www.israelnationalnews.com/News/News.aspx/309762 (last visited June 28, 2022) (those who received BioNTech Vaccine were 6.72 times more likely to suffer subsequent infection than those with natural immunity); Nathan Jeffay, Israeli, UK Data Offer Mixed Signals on Vaccine's Potency Against Delta Strain, TIMES ISR. (July 22, 2021), available at bit.ly/3xg3uCg (last visited June 28, 2022) (declining efficacy of Pfizer protection against infection).

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

17. Centene claimed to the EEOC that it "retained hundreds of employees who requested religious exemptions" but did not say whether these "retentions" were permanent. And there was no information provided to the EEOC so that the EEOC could evaluate the percentage employees who were granted from the total of employees making religious accommodation requests.

18. Those reasons provided to the EEOC are false and pretextual: plaintiffs worked from home. There were no Centene employees to protect or for that matter the public: Catherine worked alone at a computer in her residence.

19. So contrary to Centene's so-called agenda to protect others,[4] Centene employees in fully remote positions with no person contact such as the plaintiff Catherine were required to comply. Centene provided rote, contrived, and arbitrary denials to other Centene employees besides these plaintiffs requesting a religious accommodation like this one:

Denial: Does Not Meet Legal Standard
The information you submitted in support of your religious accommodation request does not meet the legal standard. The majority of your stated views are non-religious beliefs under applicable state and federal law that are essentially philosophical, social, political, health concerns and/or personal preference that are not protected by law or a basis for a religious accommodation.
As a result, you are not eligible for a religious accommodation and your vaccine exemption request is denied.

20. The plaintiff Catherine had been employed by Defendant from 2014 to 2019, then rehired on August 24, 2020, as a salaried employee. After being hired, the defendant Centene instituted a Covid 19 vaccination policy while she was pregnant.

21. This policy provided a testing option in leu of consenting to multiple Covid-19 vaccine injections.

22. The plaintiff worked from her home office with her job description as providing recommendations to users and IT person. *See* 29 CFR §541.502 (employer's place of business includes an employee's home office).

23. Catherine's job description was largely IT and allowed her to work from home with no physical contact with the public or with Centene personnel.

---

[4] These Covid-19 vaccines provided zero transmission protection to others – it did nothing to prevent the transmission of the virus as the CDC now concedes in its revised guidance.

4

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

BRIEF OVERVIEW OF PLAINTIFFS' KEY CLAIMS AND CONTENTIONS
UNDER THE MISSOURI HUMAN RIGHTS ACT AND TITLE VII

24. Under Title VII if an employee seeks a religious accommodation the employer cannot summarily impose employer-preferred workplace rules which abridge an employee's sincerely held religious beliefs without genuine and good-faith dialogue and consideration of proposed accommodations and objective evidence.

25. In that regard, Centene upended Title VII's requirements and sought to capitalize on the COVID-19 vaccines' existence as justification to run rough-shod over its legal obligations and summarily threaten with termination, and then termination, scores of employees such as Catherine.

26. In response to Catherine's religious accommodation request, Centene never claimed that granting her a religious accommodation in working from her home would create any risk to anyone – in the workplace or in client or patient safety. Centene never claimed it would suffer any undue hardship in providing Catherine an exemption from its vaccine mandate. Such a claim would be pretextual in any event.

27. Centene has never sought to support its vaccination mandate through any examples of how remote staff or those who provide telehealth or telemedicine services outside of Catherine's home setting transmit the virus and impact clients, patients, or Centene employees. Nor has Centene explained how the many employees denied religious exemptions who were in non-client/patient facing positions increased risk to those clients, patients, or fellow employees.

28. Instead, Centene fancied itself as the religious police, prosecutor, and judge who could and would determine whether Catherine really did have a good enough religious conviction about consenting to the multiple Covid-19 vaccine injections.

29. Clinical reports and studies indicate that individuals with a prior infection and natural immunity face an elevated risk of adverse effects from the vaccine, compared with those who have never contracted COVID-19. Centene never acknowledged heightened risks to employees who had recently or was concurrently been infected with a Covid-19 virus.[5]

---

[5] The heightened risk of adverse effects appears to result from "preexisting immunity to SARS-CoV-2 which may trigger unexpectedly intense, albeit very rare, inflammatory and thrombotic reactions in previously immunized and predisposed individuals." Fabio Angeli et al., SARS-CoV-2 Vaccines: Lights and Shadows, 88 EUR. J. INTERNAL MED. 1, 8 (2021), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8084611/ (last visited June 29, 2022); see also Jennifer Block, Vaccinating people who have had covid-19: why doesn't natural immunity count in the US?, BRITISH MED. J. (Sept. 13, 2021), available at

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

30. Individuals who have been previously infected may cause "exhaustion" and in some cases even a deletion, of T-cells," leading to a depleted immune response.[6]

31. At the time of Centene's denials of religious exemptions, the FDA acknowledged that while it was hoped that the COVID-19 vaccines would reduce or prevent the transmission of the virus, "the scientific community does not yet know if the COVID-19 Vaccines will reduce such transmission."[7]

32. A CDC study released in January not only demonstrated that vaccination provides no discernible benefit to the naturally immune, but it provided conclusive evidence that naturally acquired immunity confers superior protection against the Delta variant (including against transmission).[8]

33. It is because of these additional immunity mechanisms that new variants of COVID-19 resulting from the virus's mutation are unsuccessful in defeating natural immunity but are able to evade vaccines which only target the spike-protein of the original Wuhan variant.

34. Moreover, many employees such as Catherine were subjected to unwelcomed harassment due to their request for religious exemption. For them, their supposedly confidential religious exemption request generated ridicule by other Centene supervisors and associates and subjected those seeking religious exemptions to

---

https://www.bmj.com/content/374/bmj.n2101 (last visited June 23, 2022) (citing several experts and studies establishing that those who have previously been infected are more likely to experience adverse side effects from the vaccine).

[6] Alysia Finley, Why the Rush for Toddler Vaccines, WALL ST. J. (July 4, 2022) ("Scientists are also discovering that triple-vaccinated adults who were previously infected with the Wuhan variant have a weaker immune response to Omicron, leaving them more susceptible to reinfection. This phenomenon, called 'immunological imprinting,' could explain why children who received three Pfizer shots were more likely to get reinfected.")

[7] *See, e.g.,* Pfizer-BioNTech COVID-19 Vaccine Frequently Asked Questions, Food and Drug Administration, available at: https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/pfizer-biontech-covid-19-vaccine-frequently-asked-questions.

[8] Tomás M. León et al., COVID-19 Cases and Hospitalizations by COVID-19 Vaccination Status and Previous COVID-19 Diagnosis—California and New York, May-November 2021, CDC (Jan. 29, 2022), available at https://www.cdc.gov/mmwr/volumes/71/wr/ mm7104e1.htm (last visited June 29, 2022) ("infection-derived protection was greater after the highly transmissible Delta variant became predominant, coinciding with early declining of vaccine-induced immunity").

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

unwelcomed harassment regarding Catherine's and other employees' requests. Instead of this ridicule being properly addressed, it was created, ratified, and encouraged by Centene.

## PARTIES AND PERSONAL JURISDICTION

35. Plaintiff Andrew Dietrich was an employee of Centene.

36. On October 21, 2021, Catherine filed for leave under the Family and Medical Leave Act. Catherine submitted a religious accommodation request regarding Centene's Covid 19 vaccination requirement under Title VII to Centene with an explanation of her religious beliefs. Catherine's accommodation request was rejected by Defendant on November 18, 2021, stating later to the EEOC that Defendant did not believe Catherine was objecting to the Covid 19 vaccine requirement solely on religious grounds but instead on secular reasons.

37. Defendant then took an adverse employment action by informing Catherine while she was on maternity leave that unless she has provided Centene proof of vaccination by December 31, 2021, or received an approved exemption, that her Defendant would consider her last day worked as of January 27, 2022, and her employment terminated February 4, 2022.

38. Catherine gave birth December 5, 2021.

39. In violation of the Missouri Human Rights Act, Defendant discriminated against and discharged the plaintiff Catherine based on religion and sex.

40. At all times relevant hereto, Catherine is an adult female citizen of Missouri. Plaintiff was employed by Defendant to conduct business across the state of Missouri.

41. Plaintiff Catherine is a "person" as defined by RSMo § 213.010(14).

42. Defendant Centene Corporation is a foreign corporation authorized to do business in the state of Missouri with its registered agent being Corporation Service Company which can be served with legal process through its registered agent C T Corporation System 120 South Central Ave Clayton, MO 63105.

43. Defendant Centene continuously does business in Missouri through its ongoing operations.

44. Before, throughout, and after the plaintiff's employment with the defendant Centene, it employed over 500 employees in Missouri.

7

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

45. Because the defendant Centene is a corporation, it is a "person" as defined by RSMo § 213.010(15).

46. Defendant Centene is an "employer" as defined by RSMo § 213.010(8).

47. Before, throughout, and after this Plaintiff's employment with the defendant Centene, it used the services of others in exchange for pay in Missouri.

48. The defendant Centene is an "employer" as defined by RSMo § 287.030.

49. Defendant Centene is an entity which acts through its agents. It is liable for the conduct of its agents acting within the course and scope of their agency, its own negligence, the acts of its agents which Defendant knowingly ratifies, injuries incurred by its agents' performance of non-delegable duties, acts done by its agents for which the agency relationship allows or assists the agent to perform, and acts its agents take by virtue of their position with Centene.

50. Defendant Unknown Individual Titled "Absence Management" is a person.

51. "Absence Management" sent an email on January 7, 2022, from the email address of COVID-19_ProofofVaccination@centene.com.

52. "Unknown Individual 2" is a person who supervised, conspired with, or otherwise authorized the person "Absence Management" to send the email dated January 7, 2022, to numerous third parties revealing the vaccination status or protected health information of the plaintiff.

JURISDICTION AND VENUE

53. Pursuant to RSMo § 508.010.4, venue is proper in this Court because Catherine was first injured by the conduct alleged herein in St. Louis County, Missouri.

54. Pursuant to RSMo § 213.111.1, venue is proper in this Court because the discrimination alleged herein occurred in St. Louis County, Missouri.

SUBJECT MATTER JURISDICTION

55. This Circuit Court has subject matter jurisdiction over this proceeding pursuant to Article V, Section 14 of the Missouri Constitution because this is a civil case.

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

ADMINISTRATIVE PREREQUISITES

56. Plaintiff Hon filed a Charge of Discrimination with the Missouri Commission on Human Rights ("MCHR") against the defendant Centene which the MCHR assigned the charge number E-01/22-53594; 28E-2022-00331. Defendant Centene received notice of this charge.

57. On July 5, 2022, the EEOC and MCHR issued Plaintiff a right-to-sue notice authorizing her to commence a civil action within 90 days; a copy of the notice is attached hereto and is incorporated herein by reference.

58. Monday, October 3, 2022 is 90 days from July 5, 2022.

59. This action was filed before October 3, 2022, within 90 days of the EEOC/ MCHR's issuance of the plaintiff's right-to-sue notice, and within two years of the discrimination alleged herein.

60. This action has been timely filed, and the plaintiff has exhausted all her administrative remedies.

61. Plaintiff Andrew Dietrich filed an EEOC charge (560-2022-00307) on April 25, 2022.  Centene received notice of this charge.

62. On August 23, 2022, the EEOC issued the plaintiff Dietrich a right-to-sue notice authorizing him to commence a civil action within 90 days; a copy of the notice is attached hereto and is incorporated herein by reference.

FACTUAL ALLEGATIONS

63.  The above allegations are incorporated as fully set out.

64. Andrew Dietrich (Andy) a remotely working employee of Centene, was terminated from his employment with Centene February 4, 2022 because he did not consent to becoming "fully vaccinated" as was required by Centene's new policy.

65. Andy was not required to consent to being injected with any vaccines when he began working for Centene in 2010.

66. Andy requested a religious exception.  His religious exemption stated in part the following:

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

- Explain in detail why you are requesting this religious exemption and the religious principle(s) that guide your objection to vaccination.

| I have had "Covid" and my God given immunity allowed me and all of my loved ones to survive it without this intervention |
| I am objecting to taking the Covid Injections as a follower of God and feel that my body is a temple for the Holy Spirit |
| My undersanding is that there are materials within these injections (Human Fetal Tissue) and this is against my beliefs |
| God wants us to seek the truth lack of research, long term outcomes, and detailed contents of these injections John 8:32 |

- Provide the basis of your sincerely held religious belief(s), practice(s), or observance(s) that form(s) your vaccination objection.

| Judgement of Consciousness - Spirtual&Moral prinicpals guided by meditation, prayer & study around this decision |
| God Provides Free will, Freedom and Diversity these have guided my 20+ yrs in service to the nation and 11+ years @ CNC |
| Prohibition against ingestion anything that may defile the body and hence the consciousness - 1 Corintheans 8:7 |
| Theraputic Proportionality is something that I have prayed on many times as a caregiver this is not a univeral obligation. |

67. Andy was informed by Centene that his exemption was not approved. Andy was not informed why his request was denied and he was not asked for any additional paperwork or information.

68. Andy was in a work remote position with no orders to return to in person work. Andy did not consent to the covid-19 vaccine due to his religious beliefs and was discharged on February 4, 2022.

69. One of the Centene's management employees was told in a meeting, prior to the vaccine mandate being put into effect, that Centene pre-determined it would only approve 10-12% of exemption requests. This was stated prior to any exemption requests being submitted to the employer Centene.

70. After Andy was terminated February 4, 2022, a subsidiary of Centene, Centurion (who does face to face contact with prison staff), did not require employees to be "fully vaccinated" regarding a Covid-19 vaccine.

71. After February 4, 2022, Centene removed its vaccine mandate for employees is certain geographic locations in the U.S. and deployed non-vaccinated employees back into field service using protected measures such as masks or distancing.

72. Catherine is a Christian who sincerely believes that to consent to being injected with a Covid 19 substance called a "vaccine" would be a sin against God and a violation of her sincerely held beliefs.

73. In Centene's denial of her religious accommodation requested, it never claimed that Catherine's stated belief in paragraph 59 was not sincere.  However, Centene contended to the EEOC that Catherine was not sincere about that belief.

74. Under Catherine's knowledge and sincere beliefs, these named "vaccines" were developed or tested using fetal cells taken from aborted fetuses.  Catherine believes

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

that the commandment "thou shall not murder" and Jeremiah 1:5 statement that "Before I formed you in the womb I knew you, before you were born I set you apart and anointed you..."applies.

75. Centene never told Catherine in its denial of her religious exemption request that it believed Catherine was insincere about that belief stated in paragraph 61.

76. Catherine sincerely believes that abortion at any gestation is a grave sin; "Whoever sheds man's blood, by man his blood shall be shed, for in the image of God He made man" Gen. 9:6.

77. Catherine sincerely believes she is prohibited by both the Word and the Spirit from knowingly consenting to being injected with the Covid 19 vaccines or boosters because her body is God's holy temple.

78. Despite not making this contention to Catherine in its denial of her request, Centene offered a different reason to the EEOC for its denial: that Catherine was not sincere about her beliefs.

79. Catherine communicated her religious beliefs about Centene policy requiring her to consent to Covid-19 vaccine injections to Centene in her religious accommodation request and follow up responses to Centene.

80. Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, prohibits private employers from discriminating against their employees on the basis of—among other things—religion. 42 U.S.C. § 2000e et seq.

81. Title VII's anti-discrimination provisions apply to any employer who employs 15 or more employees for at least 20 weeks within a given year. Id. § 2000e(b).

82. Title VII defines the term "religion" broadly. It includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

83. On 8/3/2021, the defendant Centene published a written "COVID-19 VACCINATION POLICY"

84. Under that policy consenting to a covid 19 vaccination was not required but only "strongly suggested:"

> **POLICY:**
> **Vaccination Recommendation/Testing Requirement:** The Company strongly recommends that all employees be fully vaccinated against COVID-19 as soon as possible. Alternatively, employees who do not submit proof of vaccination will be required to participate in routine COVID-19 testing as determined by the Company.

**11**

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

> **Non-Compliance:**
> Employees who do not provide proof of vaccination will be required to participate in routine COVID-19 testing and comply with other COVID-19 protocols. Failure to comply with these protocols will result in further disciplinary action, up to and including termination of employment.

85. Under that policy a covid-19 vaccination was not required as a condition to employment but testing was if consent to the vaccine injections was not given by the employee. There was no notification to the employee of any medical or religious accommodation to that policy.

86. Centene never offered nor discussed with either plaintiff the option of routine Covid 19 testing in lieu of being "fully vaccinated" under that policy.

87. There was no notice provided in that policy as to obtaining a request for an accommodation or exemption.

88. On September 1, 2021, an "all employee meeting" was conducted by Centene. Centene's CEO Michael Neidorff stated in this video recorded meeting that anyone not getting the Covid 19 vaccination injections ought to go and see all the kids dying in hospitals because of unvaccinated people. Neidorff communicated that unvaccinated people were causing these deaths and that it was everyone's moral obligation to be fully vaccinated.

89. He stated that there was no worthy excuse for not getting injected with the Covid 19 vaccine and that Centene was now making being fully vaccinated a condition of Centene employment.

90. During an interview posted on Centene's network, Centene's Chief Medical Officer, Dr. Ken Yamaguchi, stated that Centene would be scrutinizing any accommodation requests as he believed there were no legitimate reasons to avoid being "fully vaccinated."

91. Centene's Human Resource leader stated that Centene had predetermined that only 10% of the religious accommodation requests would be approved.

92. Centene's convoluted and arbitrary exemption process was designed to discourage employees from even applying for a religious exemption.

93. Centene's exemption process created a sense of the inevitability of denials that put pressure on employees to not seek an exemption or to those who had sought religious exemptions to capitulate and consent to the multiple vaccine injections.

94. On 9/14/2021, Catherine submitted to the defendant a completed religious exemption form and an attached letter. The form stated the following:

12

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

**Religious Belief(s)**

In the space below, please provide a personal written and signed statement detailing the following:

- What religion do you practice that forms the basis of your belief against vaccination?

  I am a Christian.

- Explain in detail why you are requesting this religious exemption and the religious principle(s) that guide your objection to vaccination.

  After prayerful consideration, I have been lead by the Holy Spirit to decline the COVID-19 shots. I believe that to take any of the available COVID-19 shots would be a sin against God. Sin being any action contrary to the will of God as impressed upon me through his word (the Bible) and/or by the direction given to me through prayer by the Holy Spirit. I believe that the COVID-19 shots were developed and tested by means of sin (murder) and the Holy Spirit prohibits me from their use.

- Provide the basis of your sincerely held religious belief(s), practice(s), or observance(s) that form(s) your vaccination objection.

  I believe that all human beings are image bearers of God, and our bodies the temple of the Holy Spirit; this concept affirms the unique value and sanctity of human life. Mindful of the sixth commandment, "you shall not murder" I believe that abortion at any stage of development is a grave sin. Since I'm aware all COVID-19 shots were developed or tested using aborted fetal tissue, I am prohibited by the Word and the Spirit from partaking in their use on my body, Gods temple.

- Any additional relevant information.

  See attached letter.

Request for Religious COVID-19 Vaccination Exemption                                        Page 3 of

95. The attached letter to that form stated the following:

13

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

9/14/2021

To whom it may concern,

After prayerful consideration and biblical study, I have been led by the Holy Spirit to decline the COVID-19 injections. Therefore, I am seeking religious exemption from the COVID-19 vaccination/injection requirement for employment at Centene Corporation per Title VII of the Civil Rights Act of 1964.

I believe that to take any of the available COVID-19 injections would be a sin against God and a violation of my sincerely held beliefs. Sin is any action contrary to the will of God as he has impressed upon his people through the Bible and through the workings of the Holy Spirit on our conscience in prayer. Romans 14:23 states "But whoever has doubts is condemned if they eat, because their eating is not from faith; and everything that does not come from faith is sin." My partaking of any of these vaccines would not be from faith, and therefore a sin.

Mindful of the 6th commandment "You shall not murder" and Jeremiah 1:5 "Before I formed you in the womb I knew you, before you were born I set you apart and anointed you...", I believe that abortion at any gestation is a grave sin; "Whoever sheds man's blood, by man his blood shall be shed, for in the image of God He made man" Gen. 9:6. Since I am aware that all available COVID-19 injections were developed and/or tested using aborted fetal tissue (HEK-293: A kidney cell line that was isolated from an aborted Fetus used in testing of Moderna and Pfizer/BioNTech and PER.C6: a retina cell line derived from an 18 week old aborted fetus used in the development of the Johnson & Johnson shot) I am prohibited by both the Word and the Spirit from partaking in their use on my body, Gods holy temple; 1 Corinthians 3:16-17: "Do you not know that you are a temple of God and that the Spirit of God dwells in you? If any man destroys the temple of God, God will destroy Him, for the temple of God is holy, and that is what you are." & Exodus 23:7 "Keep far from false charge, and do not kill the innocent and righteous, for I will not acquit the wicked".

I ask that in light of these beliefs my religious exemption be respected in alignment with Title VII and I would be deemed exempt from the current COVID-19 vaccination/injection/therapy requirement.

Sincerely,

*Catherine A. B. Hon*

Catherine A. B. Hon

96. Although Centene never said this to Catherine in its denial, Centene later claimed to the EEOC that those statements "show objective signs of insincerity" which was false and not the reason provided by Centene in its denial to Catherine.

97. Although Centene never told why it denied Andy's denial, it later claimed to the EEOC that "Dietrich did not establish he had a sincerely held religious belief that conflicted with the Company's vaccine policy… his objections lacked a religious foundation."

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

98. Centene theorized that because Andy had consented to prior flu vaccines or prior immunizations, that this meant Andy knowingly consented to having substances tested with fetal cells injected into him – which was pure speculation and false.

99. For example, if an orthodox Jew who has a religious conviction about eating pork eats a meal unknowingly with pork ingredients, this is neither an intentional violation of that religious belief nor is it evidence of any inconsistency. The question that Centene never asked was whether Andy had ever knowingly consented to ingesting a drug he knew was developed from fetal research. But that question was never asked.

100. There was nothing in any of Catherine's communications that indicated Catherine was objecting to Centene's vaccine mandate for any reason other than a religious one.

101. In response to her religious accommodation statement and Catherine's EEOC charge, Centene told the EEOC that:

> [Catherine] failed to provide details regarding how her alleged religious beliefs impacted her daily life and admitted to behaviors that contradicted her position on the COVID vaccine, giving Centene an objective basis to question whether Ms. Hon truly had a sincerely held religious belief that conflicted with the Policy. Notably, Ms. Hon's Charge is similarly devoid of any details regarding her alleged religious beliefs and how they supposedly conflict with the Policy.

102. Centene's contention is pretextual, false, and deliberately ignores or otherwise misconstrues Andy's and Catherine's statements. It was not the reason Centene provided to Catherine on November 17, 2021, in its denial of her religious accommodation request.

103. On September 16, 2021, a Centene department vice president April Melson told Catherine on a department wide call that no Centene employees should request religious accommodations since she doubted any would get one.

104. Melson stated at the call it was because most people who submitted a religious accommodation request would not survive Centene's criteria and scrutiny. She warned them that they did not want that kind of attention.

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

105. Another speaker stated that requesting a religious accommodation for the Covid 19 vaccine would be "crazy" because the speaker thought it meant that an employee could not have taken a Tylenol which was met with a chorus of chuckles and general affirmations from managers and directors who were on the call.

106. At no time did Centene engage Andy or Catherine in a meaningful give and take discussion about potential accommodations for her. Catherine tried to engage Centene in dialogue, asked questions but her questions were ignored.  There were no face-to-face or verbal meetings on providing her a religious exemption accommodation except only to attempt to convince her to follow Centene's view of religion and not to follow her religious convictions. Due to Centene's plan or disinterest in communicating with Catherine about her request for religious exemption there was:

a. No discussion about what mitigation measures either plaintiff used to prevent COVID-19 transmission at their homes;

b. No discussion about what mitigation measures either would be willing to use to prevent COVID-19 transmission;

c. No discussion about the level of mitigation measures employed by Centene in plaintiff's home in order to prevent COVID-19 transmission;

d. No discussion about statistical data relating to transmission rates in a plaintiff's home;

e. No discussion about what parts of Centene's facilities a plaintiff might be willing to avoid (such as breakrooms, lounges, cafeterias, waiting rooms, etc.) as an accommodation;

f. No discussion about the frequency of COVID-19 testing a plaintiff might agree to as an accommodation;

g. No discussion about any prior exposure of either plaintiff to the SARS-Co-V-2 virus;

h. No discussion about antibody levels and other indicia of immunity to the SARS-Co-V-2 virus that either plaintiff might have;

i. No discussion about either plaintiff's reliability and why a plaintiff could be depended upon to rigorously employ mitigation measures at their home;

j. No discussion about the current level of community spread of the SARS-Co-V-2 virus;

k. No discussion about the vaccination rate at a plaintiff's home;

l. No discussion about the number of individuals with medical exemptions who are working remotely or at Centene;

16

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

m. No discussion about policies and procedures of Catherine who exclusively provide email or telephone services outside any Centene facility or hospital setting and who do not have direct contact with patients or other employees;

n. No discussion about policies and procedures for Catherine who provide support services outside of any hospital setting and who do not have contact with patients and staff; and

o. No discussion about the lack of SARS-Co-V-2 virus transmissions within any home office.

107. As a result, a plaintiff did not have reason to believe any of the foregoing topics or any other relevant factors was ever considered by Centene in relation to her/his religious exemption request, her/his questions, and responses, and each plaintiff reasonably believed that no such factors were considered by Centene.

108. On September 17, 2021, Centene emailed Catherine with the following questions:

> 1. Provide information on how your religious beliefs guided your consideration of COVID-19 vaccination and how they impact other aspects of your life.
> 2. If you are in a member-facing role, please explain whether your religious beliefs prevent you from encouraging members to get vaccinated against COVID-19 and/or engaging in other preventative health measures.
> 3. Regardless of your role, please explain whether your religious beliefs prevent you from supporting the Company's commitment to improve the health of the community including the promotion of preventative health measures such as vaccinations.
> 4. What accommodation do you propose that will permit you to perform the essential functions of your role, protect the health and safety of our workforce, reduce the spread of COVID-19, and protect the vulnerable populations we serve?

109. The questions were unclear and vague.  The questions were unclear to Catherine.

110. Most of those questions posed to Catherine had nothing to do with evaluating the motivation, validity, or sincerity of Catherine's beliefs. For example, question 2 asked about encouraging others to be vaccinated but Centene's analysis about Catherine's beliefs should not factor whether Catherine is willing to perform quid pro quo actions.  It is not a question about Catherine's religious convictions about being vaccine injected.

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

111. Similarly, question 3 asked for irrelevant information. It sought some kind of commitment from Catherine to support Centene's policy on vaccinating other employees but that has nothing to do with the validity or sincerity of Catherine's religious beliefs.

112. Question 4 was similarly irrelevant. Catherine worked from home. Irrespective, it appeared the question asked whether Catherine's religion would prevent her from supporting someone else doing something Catherine herself wouldn't do. The question had no relevancy to evaluating the validity or sincerity of Catherine's religious convictions.

113. And to the extent that anything Centene asked, it had no factual basis to question the validity, consistency, or sincerity of Catherine's religious convictions regarding consenting to Covid 19 vaccine injecting.

114. On September 21, 2021, Catherine responded to the September 17, 2022, inquisition / inquiry stating:

> Let me first say I don't know how you are qualified to judge my religion or my religious beliefs. Is the Workplace Accommodation Team somehow trained to do this? I don't think you all are qualified to judge my sincerity. Nevertheless, let me provide the following answers to your September 17 email:
>
> 1. I already stated in my religious exemption statement how my religious beliefs guided me. My religious faith informs all aspects of my life. I don't get a Covid 19 vaccine in my personal life and don't get one at work. Is there some specific area of my life you are interested in as to whether I carry my religious convictions into?
> 2. My position at Centene is not a member facing role.
> 3. I am unclear what it means to "support the company's commitment." Are you asking if I endorse the companies Covid 19 policy? Are you asking me to support something that my own religious convictions say is wrong or immoral?
> 4. It is unclear what you mean by "essential functions of my role." I assume you mean my job description. If you are asking me what I am asking, I am asking not to be forced to violate my religious convictions by being injected with a foreign substance called a Covid 19 vaccine. That accommodation can be provided because you can provide it to others based upon a medical exemption – if you have granted ANY exemptions I suppose that means that individual can do what their job description indicates AND the company can still accomplish its overall Covid 19 goal. That accommodation can be made for me as well.

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

115. Immediately after that email Catherine sent another email on September 21, 2021 stating "If you can give me further clarity on my questions, I would be happy to further respond if necessary."

116. These questions were reasonable as well as Catherine's explanations.

117. Centene never responded to those reasonable clarifying questions and did not seek any further communications about those responses.

118. On October 11, 2021, the defendant put its revised policy in writing by requiring all employees to be "fully vaccinated:"

> **POLICY:**
> **Vaccination Requirement:** The Company requires that all employees be fully vaccinated against COVID-19 as soon as possible and no later than communicated deadlines as a condition of employment.
>
> **Non-Compliance:**
> Employees who do not provide proof of vaccination will result in further disciplinary action, up to and including termination of employment.

119. In the new published policy it provided notice of a procedure to obtain a medical or religious exemption:

> **Requests for Accommodation/Exemption:**
> Requests for reasonable accommodation in the form of an exemption from the proof of vaccination requirement will be considered for employees who are unable to provide proof of vaccination due to a medical condition or sincerely held religious belief. You may request a medical accommodation by reaching out to Lincoln Financial or a religious accommodation through Ask HR via Request Central. You will be asked to provide information and/or documentation on your medical condition or sincerely held religious belief, practices or observances and requests will be analyzed on a case-by-case basis, consistent with applicable laws.

120. Under both Centene policies the defendant stated it could disclose Catherine's vaccination status to third parties, including customers, "for legitimate business purposes." Implicit in that policy was a promise by the defendant not to disclose Catherine's protected health information to third parties irrespective of whether the defendant believed it had a legitimate business purpose.

121. On October 21, 2021, Catherine filed for leave under the Family and Medical Leave Act.

122. Catherine's immediate supervisor Greg Blackshear told Catherine on a weekly basis that Centene would not provide her a religious exemption and then attempted to have Catherine adopt his religious convictions and reject her religious convictions and then consent to the Covid-19 vaccine injection.

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

123. Blackshear told Catherine that he was also a Christian and did not have the same religious convictions as Catherine about the Covid 19 vaccines. He informed Catherine that she should have the same religious convictions about that subject as he had.

124. Catherine responded telling Blackshear that her convictions about fetal tissue testing from aborted fetuses, that Catherine opposed abortion as abhorrent to God and that she couldn't participate or profit from the deaths of unborn children without it being a sin.

125. Catherine stated it might not be a sin to Blackshear but it was to her. Blackshear continued to badger Catherine in various communications until she sent him links to videos of Stanly Plotkin, and other articles by prolife religious groups discussing vaccines generally and some specific to the covid vaccine testing and development.

126. Catherine had also previously responded to questions posed by Centene. One question asked "Since the age of 18, have you received any vaccination(s), including flu shot(s)? ☐Yes ☐No." Catherine check the "YES" box.  The second checkbox asked: "Since the age of 18, have you taken any over-the-counter or prescription medication? ☐Yes ☐No." Catherine checked "YES."

127. Neither question was relevant to evaluating the validity or sincerity of Catherine's religious beliefs. The question did not ask whether Catherine had consented to injections created or tested using fetal cells.  None of the questions asked whether Catherine knowingly took medications or consented to vaccine injections that were tested or created from aborted fetal cells.

128. When one Centene employee was asked about whether she took over-the-counter or prescription medications in association with her religious exemption request, that employee refused to answer that question and was still granted a religious exemption by Centene.

129. On November 16, 2021, the defendant Centene through Lauren Liddell emailed Catherine the following:

Here, in HR Workplace Accommodations, we have reviewed your religious accommodation vaccine exemption request, and need clarification to understand the apparent inconsistency between your objection to receiving the vaccine due to your stated religious belief of not partaking in the use of Covid – 19 shots because they were developed or testing using aborted fetal tissue with your stated actions of taking past vaccine(s) and medications since age 18.  Please explain.

20

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

130. But there was nothing inconsistent whatsoever as to what Catherine had said in those answers.  On November 16, 2021, Catherine responded with the following:

> Your claim that my religious objection to the covid 19 vaccine appears inconsistent is unclear.  Are you claiming any unidentified medication I took was manufactured using fetal cells?  You have no factual basis for that conclusion and this demonstrates bad faith.  The fact I have taken any medication doesn't at all correlate to your conclusion that all medications are developed from fetal cells.
> And the idea that I took a vaccination or flu shot is similar.  Not all flu shots and vaccines are created equally.  Then if I did possibly take a medication or was injected with something that I didn't know was developed from fetal cells, then that isn't inconsistent either.  I know the Covid 19 vaccines are developed that way.
> So your assumptions and conclusions are just that -- everything I have explained and done is perfectly consistent with my religious convictions about abortion, fetal cell research, and my participation in that.
> If you have further questions in this inquisition, let me know

131. Those questions were reasonable. The dialogue Catherine engaged in was reasonable.

132. Centene never asked Catherine if she knowingly took any medications or was knowingly injected with any substances that she knew were tested or created from fetal cells.

133. Nothing that Catherine stated to Centene concerned other so-called philosophical, social, political, health, or personal preference reasons for objecting to consenting to vaccine injecting with a Covid-19 vaccine.

134. Centene deceptively and falsely told the EEOC that nothing Catherine told Centene provided "substantive information to establish a sincerely held religious belief that conflicted with" Centene's vaccine policy.

135. On the next day, November 17, 2021, the defendant emailed Catherine stating that her 9/14/2021 religious accommodation request to be exempt from the defendant's Covid 19 vaccination requirements was denied.  It stated:

> **Denial:  Does Not Meet Legal Standard**
>
> - The information you submitted in support of your religious accommodation request does not meet the legal standard. The majority of your stated views are non-religious beliefs under applicable state and federal law that are essentially philosophical, social, political, health concerns and/or personal preference that are not protected by law or a basis for a religious accommodation.
> - As a result, you are not eligible for a religious accommodation and your vaccine exemption request is denied.

21

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

136. In that response Centene did not claim that Catherine's religious beliefs were insincere or did it make any of those statements to the EEOC in response to Catherine's EEOC Charge.

137. Contrary to Centene's denial email, Catherine had never offered any information stating that her objection was anything but one arising from a religious conviction.

138. Centene had deliberately misinterpreted and then falsely claimed that Catherine had claimed other reasons than what was stated in her religious accommodation request and responses.

139. Centene used the same mechanized, mass-produced email language to other Centene employees in denying their religious requests.

140. Centene used this same perfunctory boilerplate copy-and-paste language to deny other Centene employees a religious accommodation to its Covid-19 vaccine injection policy.

141. The defendant never claimed that providing Catherine or Andy a religious accommodation would constitute a hardship upon Centene.

142. In the denial email, it stated that Catherine had the following choices:

> **Action Required**
> You have the following choices:
>
> 1. If you choose to remain unvaccinated, beyond the 12/31/2021 deadline communicated by the Company, you will be in violation of our vaccination policy which requires proof of full vaccination.
> 2. You are encouraged to begin the vaccination process as soon as possible, given that it may take 3-5 weeks from the date of the first COVID-19 vaccination shot to become fully vaccinated.
>
>   - 
>     o Should you choose to become vaccinated, you will be compensated for time taken off work to receive your vaccination(s).  Please schedule time off with your People Leader and account for this time using the "COVID-Vaccine" pay code.

143. And not to be overlooked was the fact Centene was giving Catherine a timeline of compliance while on maternity leave.  Centene was taking adverse employment actions against Catherine in changing the policy. Centene's illusory exemption process was not a legitimate individualized assessment.  It was either an utter disaster of organization, coupled with a callous refusal to reasonably communicate with employees like Catherine seeking religious exemptions, or a calculated effort to game employees into not pursuing their legal rights.

144. Catherine appealed to the defendant that denial. Catherine complained that Centene had failed to engage in good faith dialogue.  Catherine stated:

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

> I am appealing this decision on the grounds that numerous questions I asked in order to gain clarity on the questions asked by HR went unanswered. I completed the initial form and submitted a personal letter, then was sent additional questions which were unclear and I asked for clarification on them….no one replied. After two months I followed up, received one additional question to which I responded, no answers to my previous queries, and then a swift denial. No attempt at a dialogue or to clarify was made on the part of Centene whatsoever. Attached are the questions I submitted in response to the second set of questions which went unanswered.
>
> Furthermore, the denial reason does not in any way align with the information I submitted. My sole concern which has been reiterated throughout this process is to avoid sinning against God. I am a Christian who strives to align myself with His law and wisdom as taught by the Bible and guided by the Holy Spirit. This impacts a menagerie of daily decisions too numerous to list, but includes the words I use, how my time is spent, and how I am to view and treat my body and mind. To deny my accommodation request as "non religious" is preposterous. I have attached my personal letter explaining my reasoning for avoiding the Covid-19 vaccinations in detail again for a second review as nothing I have said or done implies any motive other than those stated within this letter.

145. Catherine's appeal was denied Centene in an email written by Centene employee Kevin Sweeney in an November 19, 2021 email to Catherine.

146. The defendants Centene, Absence Management, and Unknown Individual 2 communicated to Catherine on January 7, 2022, while she was on maternity leave, that her last day worked would be deemed January 27, 2022, and that her employment was terminated February 4, 2022, even though her maternity leave would not be completed until February 27, 2022.  The email stated in part that:

> **Your proof of vaccination deadline was December 31, 2021. You did not submit proof of COVID-19 vaccination or obtain an approved exemption** (or an exemption has expired or is expiring soon) **by the deadline and are in violation of Centene's COVID-19 Vaccination Policy**. Your last day worked will be January 27, 2022, and your pay through and termination date will be February 4, 2022.

147. In that email Catherine's protected health information and identity was revealed by the defendant to each of the 48 other recipients who received that email:

| From: | COVID-19_ProofofVaccination | | | | | <COVID- |
|---|---|---|---|---|---|---|
| 19_ProofofVaccination@centene.com> | | | | | | |
| Date: | Fri, | Jan | 7, | 2022 | at | 1:23 PM |
| Subject: | Proof | of | Vaccination | | Not | Submitted |

**23**

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

| | |
|---|---|
| To: SLGRENGA@AOL.COM | <SLGRENGA@aol.com>, |
| BDORROUGH520@GMAIL.COM | <BDORROUGH520@gmail.com>, |
| ANDREANAPICKETT@GMAIL.COM | <ANDREANAPICKETT@gmail.com>, |
| ECRUZSOLORIO@GMAIL.COM | <ECRUZSOLORIO@gmail.com>, |
| IAMSTEPHANIE_2@ICLOUD.COM | <IAMSTEPHANIE_2@icloud.com>, |
| STEPHANSKY_01@YAHOO.COM | <STEPHANSKY_01@yahoo.com>, |
| MAHOGANYFORD@YAHOO.COM | <MAHOGANYFORD@yahoo.com>, |
| MYRAWOODWARD06@GMAIL.COM | <MYRAWOODWARD06@gmail.com>, |
| CATIE.HON@GMAIL.COM   <CATIE.HON@gmail.com>,   OSRD11@GMAIL.COM | |
| <OSRD11@gmail.com>, | UPS05ALTIMA@YAHOO.COM |
| <UPS05ALTIMA@yahoo.com>, | AJSME2000@YAHOO.COM |
| <AJSME2000@yahoo.com>,   TEELOVA1@AOL.COM   <TEELOVA1@aol.com>, | |
| PRINCESSNYA2007@AOL.COM | <PRINCESSNYA2007@aol.com>, |
| AAANGELAWI@GMAIL.COM | <AAANGELAWI@gmail.com>, |
| MAGDOLINE.HABIB@GMAIL.COM | <MAGDOLINE.HABIB@gmail.com>, |
| CRYSTALMARISCAL@LIVE.COM | <CRYSTALMARISCAL@live.com>, |
| PREVILONK@GMAIL.COM | <PREVILONK@gmail.com>, |
| MAZIESTONER5@GMAIL.COM | <MAZIESTONER5@gmail.com>, |
| OTOCALI@AOL.COM     <OTOCALI@aol.com>,   TORREZK66@GMAIL.COM | |
| <TORREZK66@gmail.com>, | ALANIA20ALLIE16@ICLOUD.COM |
| <ALANIA20ALLIE16@icloud.com>, | WOODLEY.TRISH@YAHOO.COM |
| <WOODLEY.TRISH@yahoo.com>, | KIMORAPAPI@GMAIL.COM |
| <KIMORAPAPI@gmail.com>, | BOVIANTERRENCE@GMAIL.COM |
| <BOVIANTERRENCE@gmail.com>, | DES.ROBBINS@GMAIL.COM |
| <DES.ROBBINS@gmail.com>. | SUSANKJONES.SKJ@GMAIL.COM |
| <SUSANKJONES.SKJ@gmail.com>, | LCLEONE16@GMAIL.COM |
| <LCLEONE16@gmail.com>, | JCBYRD17@YAHOO.COM |
| <JCBYRD17@yahoo.com>, | JOYOUSBIGGINS@GMAIL.COM |
| <JOYOUSBIGGINS@gmail.com>, | Milton           N.           Vega |
| <MILTON.N.VEGA@healthnet.com>, | GODSDAUGHTER0407@YAHOO.COM |
| <GODSDAUGHTER0407@yahoo.com>, | AMR1990@ME.COM |
| <AMR1990@me.com>, | JESSICA.PIERCE52116@GMAIL.COM |
| <JESSICA.PIERCE52116@gmail.com>, | KEMBERLYRICHARDS@GMAIL.COM |
| <KEMBERLYRICHARDS@gmail.com>, | JONELLECO@GMAIL.COM |
| <JONELLECO@gmail.com>, | LWILLIS2000@GMAIL.COM |
| <LWILLIS2000@gmail.com>, | LKLYLE0616@ICLOUD.COM |
| <LKLYLE0616@icloud.com>, | ANGELCAT1997@GMAIL.COM |
| <ANGELCAT1997@gmail.com>, | DONNACRS31@YAHOO.COM |
| <DONNACRS31@yahoo.com>, | BIGDONDON55@YAHOO.COM |
| <BIGDONDON55@gmail.com>. | AMAIRA.RAJA@YAHOO.COM |
| <AMAIRA.RAJA@yahoo.com>, | NAKIEYATURNER@GMAIL.COM |
| <NAKIEYATURNER@gmail.com>, | TAMEKA_NORVELL@YAHOO.COM |
| <TAMEKA_NORVELL@yahoo.com>, | LAKISHACUSHSHON86@GMAIL.COM |
| <LAKISHACUSHSHON86@gmail.com>, | TYCONCAL86@GMAIL.COM |

24

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

<TYCONCAL86@gmail.com>,
<JACOBBURKE96K@gmail.com>,
<munguia824@gmail.com>

JACOBBURKE96K@GMAIL.COM
munguia824@gmail.com

Dear Employee,

Earlier this year, we initiated the new policy requiring proof of vaccination as a general condition of employment, as we are deeply committed to protecting all our communities, employees, and those who are unable to receive a vaccine due to health or age restrictions, especially young children.

**Your proof of vaccination deadline was December 31, 2021. You did not submit proof of COVID-19 vaccination or obtain an approved exemption** (or an exemption has expired or is expiring soon) **by the deadline and are in violation of Centene's COVID-19 Vaccination Policy**. Your last day worked will be January 27, 2022, and your pay through and termination date will be February 4, 2022. As communicated, all Centene employees are required to demonstrate proof of full vaccination as a general condition of employment. Employees who fail to submit proof of full vaccination are subject to disciplinary action, up to and including termination.

Upon your termination a Termination Notice will be emailed to your personal email address in Workday with additional information about how to return any company property or documents in your possession as well as information on your benefits and other matters relating to the end of your employment.

## ADDITIONAL FACTUAL ALLEGATIONS

148. Since the early days of the pandemic, three separate COVID-19 vaccines have been developed and authorized for use in the United States. The FDA issued an Emergency Use Authorization for the Pfizer-BioNTech vaccine on December 11, 2020. A week later, the FDA issued a second EUA for the Moderna COVID-19 vaccine. Finally, the FDA issued an EUA for the Johnson & Johnson COVID-19 vaccine on February 27, 2021.

149. On August 11, 2022, CDC issued new guidelines which basically admitted vaccinating and masking had no positive effect on preventing transmission of any variation of any covid virus. It stated that those exposed to a virus are no longer required to quarantine, that there is no distinction between vaccinated and unvaccinated status, and no longer recommended to screen anyone who is asymptomatic.

150. But even under the CDC guidance when Centene enacted and modified its Covid policy, CDC issued revised guidance during that time period due to new data "that

25

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

the Delta variant was more infectious and was leading to increased transmissibility when compared with other variants, even in some vaccinated individuals."[9]

151. As of October 27, 2021, the CDC's "Nowcast" model which tracked proportions of circulating variants in the United States reported that the Delta variant comprised 99.6% of the variants recently detected throughout the U.S.[10]

152. It was well understood from October 2021 when Centene published its revised vaccine mandate that the Delta variant was "spreading in settings where there is high vaccine coverage."[11]

153. These studies indicated that vaccinated individuals were susceptible to infection with the Delta variant and presented a risk of transmitting SARS-CoV-2 to others.[12]

154. The researchers in a University of Wisconsin Study within the relevant time frame concluded that, "a substantial proportion of individuals with SARS-CoV-2 vaccine breakthrough infections during [their] study period ha[d] levels of SARS-CoV-2 RNA in nasal secretions . . . consistent with the ability to transmit the virus to others."[13]

155. In other words, it was known to Centene at the relevant times that a covid-19 vaccine injected person may be as contagious as a non-vaccinated person once they contract the Delta variant[14] yet conducted itself as though vaccines prevented transmission.

---

[9] "Science Brief: COVID--19 Vaccines and Vaccination," CDC website (updated Sept. 15, 2021), available at: https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html (hereafter "CDC Brief").

[10] CDC COVID-19 Data Tracker, Variant Proportions, CDC website (for week ending Oct. 23, 2021), available at: https://COVID-19.cdc.gov/COVID-19-data-tracker/#variant-proportions.

[11] "Vaccinated and unvaccinated individuals have similar viral loads in communities with a high prevalence of the SARS-CoV-2 delta variant," University of Wisconsin (July 31, 2021) ("University of Wisconsin Study") at 1; available at: https://www.medrxiv.org/content/10.1101/2021.07.31.21261387v1.

[12] University of Wisconsin Study at 2-3.

[13] *Id.* at 2.

[14] Public Health England (Aug. 6, 2021) at 35; University of Wisconsin Study at 2-3. "Outbreak of SARS-CoV-2 B.1.617.2 (Delta) Variant Infections Among Incarcerated Persons in a Federal Prison — Texas, July–August 2021, at 3 ("During a COVID--19 outbreak in a federal prison involving the highly transmissible SARS-CoV-2 Delta variant, transmission was high among vaccinated and unvaccinated persons. . . the duration of positive serial test results was similar between these two groups, and infectious virus was cultured from both vaccinated and unvaccinated participants").

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

156. The inability of the COVID-19 vaccines to prevent the transmissibility of SARS-CoV-2, particularly as to highly transmissible variants of concern, was well known by Centene when it adopted its vaccine mandates and knowledge of this limitation of the vaccines was known to Centene when it forged ahead with the wholesale denial of religious exemptions claiming the religious beliefs of an employee was not religious enough, or sincere, or the real reason for the employee's request.

157. The latest peer reviewed study SERIOUS ADVERSE EVENTS OF SPECIAL INTEREST FOLLOWING MRNA COVID-19 VACCINATION IN RANDOMIZED TRIALS IN ADULTS AUGUST 31, 2022 https://www.sciencedirect.com/science/article/pii/S0264410X22010283 include researchers from Stanford University, the University of Maryland, and UCLA. The study provides the following list of confirmed adverse events (or side effects) of the respective mRNA vaccines. It also provides the risk ratios versus Covid-19 (over 1 is a factor increase, under 1 is a factor decrease).

- "In July 2021, the FDA reported detecting four potential adverse events of interest: pulmonary embolism, acute myocardial infarction, immune thrombocytopenia, and disseminated intravascular coagulation following Pfizer's vaccine based on medical claims data in older Americans…. Three of these four serious adverse event types would be categorized as coagulation disorders, which is the Brighton AESI category that exhibited the largest excess risk in the vaccine group in both the Pfizer and Moderna trials."
- "In the Moderna trial, the excess risk of serious AESIs (15.1 per 10,000 participants) was higher than the risk reduction for COVID-19 hospitalization relative to the placebo group (6.4 per 10,000 participants)"
- "In the Pfizer trial, the excess risk of serious AESIs (10.1 per 10,000) was higher than the risk reduction for COVID-19 hospitalization relative to the placebo group (2.3 per 10,000 participants)."

158. Israeli researchers in a large study conducted during the summer of 2021 (and issued in late August 2021) "in one of the most highly COVID-19–vaccinated countries in the world, examined medical records of tens of thousands of Israelis, charting their infections, symptoms, and hospitalizations between 1 June and 14 August, when the Delta variant predominated in Israel" and found natural immunity stronger and longer lasting that that induced by the Pfizer vaccine.[15]

[15] "Comparing SARS-CoV-2 natural immunity to vaccine-induced immunity: reinfections versus breakthrough infections," Maccabie Healthcare Services (Aug. 25, 2021) ("Israel Study") at 3.

27

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

159. The Israel Study found that "never-infected people who were vaccinated in January and February were, in June, July, and the first half of August, six to 13 times more likely to get infected than unvaccinated people who were previously infected with the coronavirus. In one analysis, comparing more than 32,000 people in the health system, the risk of developing symptomatic COVID-19 was 27 times higher among the vaccinated, and the risk of hospitalization eight times higher."[16]

160. Charlotte Thålin, a physician and immunology researcher at Danderyd Hospital and the Karolinska Institute in Stockholm who studies immune responses to SARS-CoV-2, said the Israel Study is "a textbook example of how natural immunity is really better than vaccination."[17]

161. Centene's vaccine mandate was even more encompassing than the requirements of the Centers for Medicare & Medicaid Services (CMS) of the U.S. Department of Health & Human Services interim final rule with comment ("IFC"). The IFC does not apply to those who work remotely.[18] However, Centene's mandate applied to employees such as Catherine who worked remotely from home.

162. Centene did not claim it would be an undue hardship to it to grant Catherine an accommodation – instead it rewrote her religious request, then challenged her motivation, sincerity, and validity of her religious beliefs regarding consenting to Covid-19 vaccine injecting.

163. Centene's exemption process was not consistent with EEOC guidance on private employers issuing COVID-19 vaccine mandates. *See* What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws §§ K.1 & K.2., EEOC (May 28, 2021), https://www.eeoc.gov/wysk/what-you-should-know-about-COVID-19-and-ada-rehabilitation-act-and-other-eeo-laws.

---

[16] "Having SARS-CoV-2 once confers much greater immunity than a vaccine—but vaccination remains vital," Science (Aug. 26, 2021), available at: https://www.science.org/content/article/having-sars-cov-2-once-confers-much-greater-immunity-vaccine-vaccination-remains-vital.
[17] *Id.*
[18] 86 Fed. Reg. 61,570 (Nov. 5, 2021) ("Individuals who provide services 100 percent remotely, such as fully remote telehealth or payroll services, are not subject to the vaccination requirements of this IFC").

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

## Count 1

## MISSOURI HUMAN RIGHTS ACT
## CATHERINE HON V CENTENE

164. The above allegations are incorporated as fully set out.

165.  With Catherine harboring a sincere religious objection to consenting to COVID-19 vaccine injections and then denied a religious exemption, the defendant Centene has violated the Missouri Human Rights Act.

166. Plaintiff Catherine was presented with the life-altering question whether to consent to a several COVID-19 vaccination injections against her religious conscience or face discipline or termination. Very few scenarios paint a bleaker picture than giving up your livelihood in order to follow your religious beliefs.

167. Specifically, if Catherine failed to consent to the numerous COVID-19 vaccine injections, Centene considered her in violation of its policy and was then subject to employee discipline, termination, adverse employment actions, or other punishment based on the charge of employee misconduct.

168. The defendant Centene's illusory religious exemption process was designed from the beginning, and then successfully implemented, to result in the denial of all or virtually all exemption and accommodation requests. In so doing, Centene failed to engage its employees in a good faith interactive process, and failed to respect and accommodate their religious beliefs including those of the plaintiff Catherine.

169. Centene already demonstrated it could accommodate Catherine's religious objections from its original Covid 19 policy which stated it would accommodate Catherine's refusal to be vaccine injected by having her subjected to testing.

170. Centene could easily accommodate Catherine's request because she worked from home and had no physical contact with the public or with Centene personnel.

171. Centene had already predetermined an arbitrary percentage of employees who would be religiously accommodated.   The process it created and applied was a theatrical pretext to religious discrimination. *U.S. Navy SEALs 1–26 v. Biden*, --- F. Supp. 3d ----, 2022 WL 34443, at *1 (N.D. Tex. Jan 3, 2022) (the religious accommodation process proved to be nothing more than a quixotic quest for the plaintiff because it was "by all accounts … theater").

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

172. This Count is brought pursuant to the Missouri Human Rights Act (MHRA), Chapter 213 of the Missouri Revised Statutes.154. Section 213.055 R.S.Mo. states in part:

> It shall be an unlawful employment practice…to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's… sex…religion…to limit, segregate, or classify his employees or his employment applicants in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's … sex … religion….

173. Defendant Centene is an employer as defined under Chapter 213 R.S.Mo.

174. Defendant Centene has violated Title VII of the Civil Rights Act of 1964 by (i) creating and maintaining a sham religious exemption application process, (ii) failing to engage in the interactive process, (iii) granting at least one individual a religious exemption and reasonable accommodation but denying the same to the similarly situated Plaintiffs and numerous other employees, and/or (iv) otherwise failing to offer the plaintiff a reasonable religious accommodation.

175. Title VII makes it unlawful to discharge or otherwise to discriminate against an individual because of that individual's religion. 42 U.S.C. § 2000e-2(a)(1). The statute defines "religion" to include "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). Importantly, once the plaintiff has established a prima facie case of discrimination, the burden shifts to the employer to make a reasonable accommodation of the religious practice or to show that any accommodation would result in undue hardship.

176. Defendant Centene never claimed providing Catherine a religious accommodation would result in an undue hardship to Centene.

177. Defendant Centene did not provide Catherine a legitimate process through which she could apply for, and receive, a religious exemption.

178. Defendant Centene's vague and generic follow up questions and its denial were based upon Centene's illusory so-called case by case or evidence-based criteria that Centene never provided Catherine in advance.

179. The questions asked of Catherine were unclear and then contained no guidance for Catherine as to any criteria Centene would be using to evaluate her religious accommodation request.

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

180. In its denial Centene deliberately rewrote or otherwise deliberately misconstrued the basis for Catherine's religious accommodation request and then wholly disregarded it irrespective of how many other theoretical reasons Centene conjured up that might have existed to object to the vaccine injection.

181. Thus, Centene's entire exemption application process was a sham and designed to result in mass denials, which is exactly what occurred.

182. Despite Catherine asking for clarification on the follow up questions posed to her, at no time during the application process did Centene ever bother to meaningfully engage in the interactive process.

183. At no time did Centene engage Catherine in any good faith dialogue or in any good faith attempt to investigate whether accommodations were possible. In fact, Centene never claimed accommodations were not possible – only that it believed Catherine's objections were not solely religious or religious enough for Centene's satisfaction.

184. Instead of engaging the plaintiff in good faith, Centene denied the plaintiff's religious exemption and other requests en masse, providing little more than sham copy and paste responses.

185. For example, on October 25, 2021, Centene provided the same rote copy and paste denial to another Centene employee's religious accommodation request:

> Denial: Does Not Meet Legal Standard
> The information you submitted in support of your religious accommodation request does not meet the legal standard. The majority of your stated views are non-religious beliefs under applicable state and federal law that are essentially philosophical, social, political, health concerns and/or personal preference that are not protected by law or a basis for a religious accommodation.
> As a result, you are not eligible for a religious accommodation and your vaccine exemption request is denied.

186. Centene accommodated objections based upon secular (medical) reasons and granted some religious exemptions to employee(s) who utilized the same or substantially similar religious objection as Catherine.

187. Defendant Centene harassed and discriminated against Plaintiff based upon her religion and sex.

188. Defendant Centene terminated the plaintiff because of her religion.

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

189. Defendant Centene limited, segregated, and classified the plaintiff in order to deprive her of employment opportunities and adversely affected her status as an employee because of her sex and religion.

190. The defendant discriminated against Catherine on the basis of sex. When the defendant denied Catherine's religious accommodation request, she was pregnant and had made a timely maternal leave request.

191. Catherine's baby was born December 5, 2021. Her maternity leave lasted until February 27, 2022.

192. The defendant discriminated against Catherine on the basis of religion. Defendant indicated it was deeply committed to protecting those who are unable to receive a vaccine due to health or age restrictions but Catherine worked from home making that concern irrelevant and not applicable.

193. The defendant's harassment and discrimination of the plaintiff affected terms, conditions, and/or privileges of her employment.

194. Defendant Centene communicated with its supervisors to persuade or otherwise talk employees out of following their respective religious convictions and was further aware of the harassment and discrimination inflicted on the plaintiff.

195. Defendant Centene discharged and discriminated against the plaintiff with respect to her compensation, terms, conditions, or privileges of employment, because of her religion, pregnancy, and sex

196. Plaintiff's religion was a contributing and motivating factor and the exclusive cause in the defendant Centene's discriminatory actions against her.

197. Plaintiff has suffered emotional anxiety, stress, and insomnia as a result.

198. Plaintiff suffered financial loss, incurred attorney fees and costs, decreased business opportunities, emotional pain, suffering, inconvenience, loss of enjoyment of life because of the actions of the Defendants.

199. The defendant Centene's articulated reasons for its actions were pretexts for unlawful actions.

200. The defendant Centene's conduct was outrageous because of the defendant Centene's evil motive or reckless indifference to the plaintiff's rights.

32

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

201. Defendant Centene had already arbitrarily pre-determined a percentage of religious accommodations to be granted and then communicated that to employees such as Catherine to abandon or not seek a religious accommodation.

202. Defendant Centene used its employees to attempt to convince Catherine to abandon her sincere religious beliefs about Covid 19 vaccine injections.

203. The defendants improperly revealed Catherine's private protected health information to these parties.

204. The defendant did not have consent from Catherine to disclose her vaccination status or any protected health information to these third parties.

205. The defendants harassed and retaliated against Catherine by revealing her private information in the manner that was done.

206. Under the old and revised policy, the defendant Centene stated:

> The Company will obtain the employee's consent when required to do so by applicable state law before disclosing vaccination status to third parties.

207. The defendants published Catherine's private information to third parties of which she did not consent. The information published is a private matter concerning only the plaintiff which third-parties have no legitimate concern, and the publication was designed to retaliate, embarrass, and coerce Catherine.

208. Defendant took and continued to take adverse employment actions against Catherine while on maternity leave.

209. Because of the revelation to the other persons, Catherine replied to the email addresses informing them that she had filed an EEOC complaint against the defendant.

210. Defendant retaliated against Catherine for exercising her maternity and religious rights by terminating her employment and by revealing her identity and termination to the other cc'd parties.

211. Despite the Covid 19 pandemic in existence, even as late as October 11, 2021, Centene said it was prepared to accommodate its religiously-exempt employees by allowing them to indefinitely undergo routine testing.

212. And though Centene was in a health-care related field, it presented no justification for its abrupt policy change in October 2021. Patients, visitors, and even employees of other hospital groups that provide medical or religious accommodations

to their employees were still permitted to enter hospital or medical facilities that Centene served, just as they were before the October policy change. Under the new policy, Catherine who was terminated for being unvaccinated would nonetheless be permitted to visit any of those facilities as a patient or a guest as unvaccinated.

213. OSHA's workplace rules allows the option of masking and testing. 29 C.F.R. § 1910.501.

214. Centene refuses to acknowledge what the Missouri Human Rights Act and Title VII plainly requires. *See e.g., David Sambrano et. al. v. United Airlines, Inc.,* Case No. 4:21-01074-P (N.D. Texas. Oct. 18, 2021) (granting temporary restraining order and enjoining refusal to provide reasonable accommodation to employees with religious objections to COVID-19 vaccines); *Dr. A. v. Hochul,* No. 1:21-CV-1009-DNH-ML, 2021 WL 4734404, *9 (N.D.N.Y. Sept. 14, 2021) (granting preliminary injunction against enforcement of New York's COVID-19 vaccine mandate on healthcare workers for failure to grant religious exemptions); *We The Patriots USA, Inc. v. Hochul,* No. 21-2179, dkt. 65 (2d Cir. Sept. 30, 2021) (issuing an injunction pending appeal against enforcement of New York's COVID-19 Vaccine Mandate); *Magliulo v. Edward Via College of Osteopathic Medicine,* No. 3:21-CV-2304, 2021 WL 36799227 (W.D. La. Aug. 17, 2021) (granting temporary restraining order against a medical school for the school's failure to grant religious exemptions when reasonable accommodations were available (such as masking, testing, etc.) and mandatory vaccination was not the least restrictive means of achieving the school's interest in protecting the school's student body); *Bilyeu v. UT-Battelle, LLC,* No. 3:21-cv-352, 2021 WL 4859932, * (E.D. Tenn. Oct. 15, 2021) (granting TRO enjoining healthcare employer "from terminating or placing on indefinite unpaid leave any employee who has received a religious or medical accommodation").

215. Defendant's actions were intentional, willful, knowing, wanton and malicious, and in flagrant disregard for the rights of the plaintiff.

216. Defendant engaged in the above discrimination because of the plaintiff's pregnancy, sex, and religion.

217. Defendant's conduct directly caused the plaintiff damages, including lost wages, emotional distress, frustration, humiliation, and the deprivation of the plaintiff's civil rights under Missouri law.

218. The actions and conduct set forth herein demonstrate the defendant acted with a reckless indifference or conscious disregard for the rights of the plaintiff and others.

219. Centene:

**34**

Electronically Filed - St. Louis County - September 07, 2022 - 09:12 AM

a. Intentionally pursue a strategy to terminate or not grant a religious exemption for as many employees as possible who sought a religious exemption to taking a COVID-19 vaccine;

b. Failed to provide Catherine with an adequate mechanism for requesting an accommodation when it required requests to be submitted through an online system which limited the amount of information that could be provided in support of an exemption request and by an arbitrary date;

c. Failed to comply with its obligations under federal law to engage in the interactive process when responding to her accommodation request and queries;

d. Failed to comply with its obligations under federal law through providing Catherine a confusing and chaotic process for seeking a religious exemption;

e. Provided a perfunctory one-sentence justification in Catherine's denial that was pretextual;

f. Failed to comply with its obligations under federal law to reasonably accommodate Catherine with her religious objection to its vaccine mandate and to not discriminate when it offered no accommodations and denied her religious exemption request on the basis that she was not sincerely motivated, or did not have a sincere religious belief while granting medical exemption requests;

g. Statements made by Centene supervisors and leaders stating it had predetermined a percentage and that consenting to COVID-19 vaccine injections was a moral obligation was Centene's motive for its denial of employees such as Catherine's religious exemptions;

h. Engaged in religious discrimination when it told all Centene employees that there was going to be a mass denial, a limited percentage, and that they were morally required to be vaccinated and then denied a high percentage of religious exemption requests to Centene's vaccine mandate;

i. Retaliated against employees such as Catherine who engaged in protected activity when it initially responded to all or most exemption requests by denying the request and then engaging in a common pattern of conduct designed to discourage or dissuade employees from requesting (or continuing to seek) an accommodation;

j. Retaliated against employees such as Catherine who engaged in protected activity when who engaged in protected activity when it purposefully and perfunctorily denied requests for religious exemption without fully examining them.

WHEREFORE, Plaintiff prays for Judgment against the defendant Centene on Count I, finding that the defendant violated RSMo § 213.055 and awarding the plaintiff fair and reasonable damages, costs, fees, a fee enhancement, interest, and all other relief the Court may grant.

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

**Count 2**
**VIOLATION OF TITLE VII, 42 U.S.C. § 2000E, ET SEQ.**
**RELIGIOUS DISCRIMINATION—RETALIATION**
**EACH PLAINTIFF V CENTENE**

220. To the extent they do not conflict with the allegations contained in this count, each Plaintiff incorporates all other allegations of the Petition as if more fully set forth herein.

221. Title VII prohibits each defendant from retaliating against Andy and Catherine for engaging in protected activity.

222. Plaintiff engaged in protected activity when she sought maternity leave. requested (or sought to request) religious accommodations from Centene's vaccine mandate, and asked clarifying questions, and provided further responses to Centene's inquiries about the validity and sincerity of Catherine's religious beliefs.

223. Attempting to leverage access to the religious application process itself to have its supervisors attempt to talk Catherine out of following her religious convictions or otherwise require Catherine to abandon her Title VII rights and agree to the vaccine mandate is itself retaliatory and an attempt to limit the Title VII rights of Catherine.

224. Centene's actions in telling unvaccinated employees they are morally responsible for others contracting Covid or in declaring that only 10 percent of applicants would be approved or in having Catherine's immediate supervisor attempt to dissuade her from following her religious beliefs, its questions and failure to clarify it questions,  is further evidence of the lack of good faith in Centene's handling of its vaccine mandate exemption process.

225. Centene's pattern and practice of questioning employees with the same vague questions, not responding to questions, and then responding with the same perfunctory, pro forma, denials that everyone else received also supports the conclusion that no individualized inquiry was undertaken as to any religious exemptions.

226. The perfunctory rote denials, along with the lack of face-to-face or telephonic communication with Andy or Catherine about her questions or the circumstances in which she works or other relevant matters raises an inference that little or no inquiry or individualized evaluation was given to her request.

227. These actions did, and were intended to, coerce Catherine, Andy, and other employees to either forgo their religious beliefs and consent to COVID-19 vaccine injections or abandon or not fully document their applications for religious exemption.

**36**

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

228. Centene's rewriting of Catherine's religious accommodation request was arbitrary and not made in good faith and is evidence of that no individualized evaluation was given to her personal religious beliefs.

229. Centene's cumbersome, chaotic, and confusing religious exemption process constituted retaliation towards Andy and Catherine in seeking a religious exemption.

230. Centene's discriminatory treatment of religious accommodation requests – arbitrarily setting a 10% maximum approval standard, and its open communications stating that religious objections would not be recognized on a wholesale basis while at the same time granting requests for a medical accommodation – supports an inference that Centene planned to not grant religious accommodation requests and that the religious exemption process was theatre and a charade.

231. Further, Centene's false characterization of employee's religious exemption requests was coercive, prejudicial to each plaintiff, and in retaliation for each asking questions, giving opinions, and seeking a religious exemption.

232. Further, Centene's illusory communications claiming that individualized assessment had occurred for employees were false and were intended to mislead each plaintiff and dissuade each, as well as others similarly situated, from pursuing their rights under Title VII.

233. Plaintiffs' religious beliefs and their protected activity of seeking a religious exemption, answering and asking questions, were the causes of Centene's adverse employment actions against each.

234. By retaliating against each plaintiff for engaging in protected activity Centene has violated Title VII. This violation has harmed and continues to harm each plaintiff.

235. Each Plaintiff has filed charges with the EEOC complaining of these retaliatory and unlawful actions.

236. Wherefore, each plaintiff requests that the Court grant the relief requested in their prayer for relief made under any count contained in this petition.

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

**Count 3**
**VIOLATION OF TITLE VII, 42 U.S.C. § 2000E, ET SEQ.**
**RELIGIOUS DISCRIMINATION— DIRECT AND INDIRECT METHODS**
**EACH PLAINTIFF V CENTENE**

237. To the extent they do not conflict with the allegations contained in this count, Plaintiffs incorporate all other allegations of the Petition as if more fully set forth herein.

238. Pursuant to 42 U.S.C.A. § 2000e-2(a)(1) it is "an unlawful employment practice for an employer. . . to discharge any individual . . . because of such individual's . . . religion."

239. The Supreme Court has observed that this "intentional discrimination provision prohibits certain motives, regardless of the state of the actor's knowledge," *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.,* 575 U.S. 768, 773 (2015), and that "Title VII does not demand mere neutrality with regard to religious practices [of employees]—that they be treated no worse than other practices. Rather, it gives them favored treatment[.]" *Id.* at 775.

240. Therefore, Title VII will support a claim for "reverse religious discrimination: that defendants subjected claimants to discrimination by imposing religious practices and beliefs on claimants." *Equal Opportunity Emp. Comm'n v. United Health Programs of Am., Inc.,* 213 F. Supp. 3d 377, 391 (E.D.N.Y. 2016).

241. "Title VII . . . protects employees from discrimination because they do not share their employer's religious beliefs." *Id.* at 392.

242. In connection with Centene's vaccination mandate, Catherine's immediate supervisor stated he was a Christian and that as a Christian Catherine should adopt his religious beliefs and consent to Covid-19 vaccine injecting.

243. Centene's statements about unvaccinated being responsible for illness or deaths and referral to moral obligations a moral imperative upon Catherine which required each plaintiff to set aside his/her personal religious beliefs on pain and penalty of losing employment which is overtly discriminatory.

244. Title VII prohibits Centene from requiring its employees conform to a religious belief that COVID-19 vaccination is a moral imperative or to its interpretation or version of Theism or Christianity or its interpretation of the Bible.

245. Centene's inhospitable view of the religious beliefs of employees like the plaintiffs who find consenting to COVID-19 vaccine injecting to be morally

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

objectionable and contrary to their religious practices supports an inference that the plaintiffs were discriminated against based on their respective refusal, on religious grounds, to consent to COVID-19 vaccine injections and due to each applying for religious exemption.

246. Additional evidence of Centene's discrimination and animus towards those unwilling to consent to COVID-19 vaccine injections due to sincerely held religious beliefs is Centene's handling of religious exemption requests in comparison to its treatment of exemption requests based on secular reasons.

247. Centene's discriminatory treatment in the handling of religious exemption requests vis-à-vis medical exemption requests, i.e., favoring medical exemptions while disfavoring religious exemptions, presents a classic case of reverse discrimination.

248. Reliance on a pretextual or insufficient reason for its adverse employment decisions raises an inference of discrimination.

249. Further evidence of Centene's bias and discrimination against the plaintiff is the perfunctory and plainly pretextual reason given every applicant denied a religious exemption.

250. Each Centene employee had unique circumstances relevant to his or her religious accommodation request analysis that should have been undertaken to address their situation. Yet, they were all treated with the same one-size fits all approach by Centene. Thus, this aspect of Centene's Title VII approach was insufficient as well.

251. For example, although Centene employees work for Centene in some compacity, they work in different locations: some work remote while others may be in sales visiting hospitals. Each requesting employee had different job functions. Further, the medical facilities that Centene served had differing patient bases. In fact, some employees such as these plaintiffs had no personal and physical interaction with patients or any other Centene employee. Each of these factors and others impact assessment of the respective accommodation. Yet, Catherine received the same, identical, discriminatory rote reasons for denying her accommodation request. Andrew was given no explanation.

252. The totality of the circumstances related to Centene's cumbersome, chaotic, and confusing religious exemption process also supports an inference of religious discrimination.

39

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

253. It is apparent that the reason given by Centene for not providing accommodation (i.e., believed that Andrew knowingly ingested medications tested with fetal cells or that Centene believed religion was not the sole reason or not good enough reason or was insincere) was pretextual as Centene did not consider individualized information about Catherine's beliefs or any relevant to risk to any other client or employee.

254. It is reasonable to infer from the totality of the circumstances that Centene did not bother engaging in a meaningful interactive process with those seeking a religious exemption such as Catherine because Centene intended to discriminate against those seeking religious exemptions and never intended to provide them with a reasonable accommodation.

255. Centene and/or the Centene discriminated against each plaintiff by failing to grant her/him a religious exemption and then terminating her/him.

256. Centene discriminated against Catherine declaring, while she was on maternity leave, that terms and conditions of her employment had been changed.

257. By discriminating against each plaintiff because of her/his sincerely held religious beliefs and their decisions to apply for religious exemptions Centene violated Title VII, and these violations have harmed and continues to harm each plaintiff.

258. Centene is fully responsible for the discriminatory conduct of Centene's employees or agents because the Centene permitted them to handle vaccination procedures and the religious exemption process in relation to the Centene' employees and these persons or entities carried out Centene's directive to deny religious accommodation requests.

259. Each Plaintiff filed a charge with the MHRC or EEOC complaining of these unlawful actions.

260. Wherefore, each plaintiff requests that the Court grant them the relief requested including the following: compensation for:

   a. Termination or employee misconduct contained in her personnel file;
   b. Deterioration in job skills;
   c. Lost bonus pay;
   d. Lost seniority;
   e. Loss of preferential shifts and other adverse impacts on working conditions;
   f. Loss of wages; and
   g. Extreme stress and anxiety.

Each plaintiff has suffered the losses and damages described in this petition.

40

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

WHEREFORE, the plaintiffs Catherine Hon and Andrew Dietrich request damages, including lost benefits and wages due to maternity leave and their respective terminations, unpaid lost wages due to wrongful discharge or constructive discharge, back pay, reinstatement or front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages, including, but not limited to, damages for pain and suffering, mental and emotional distress, suffering and anxiety, reductions in wages, expenses costs and other damages due to each of the defendant's wrongful conduct; award the plaintiff reasonable attorneys' fees and costs; and grant any other relief that the Court deems just, proper, and equitable.

**JURY TRIAL DEMAND**

PLAINTIFFS HEREBY REQUEST A JURY TRIAL

<u>By:/s/Linus L. Baker</u>
Linus L. Baker MO 44980
6732 West 185th Terrace
Stilwell, Missouri 66085-8922
913.486.3913
913.232.8734 (fax)
E-Mail: linusbaker@prodigy.net
Attorney for the plaintiffs

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**St. Louis District Office**
1222 Spruce St, Rm 8 100
St Louis, MO 63103
(314) 798-1960
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 08/23/2022

**To:** Mr. Andrew H. Dietrich
5100 Katie Valley Drive
IMPERIAL, MO 63052

Charge No: 560-2022-00307

EEOC Representative and email:    Kenneth Waters
Investigator
Kenneth.Waters@eeoc.gov

### DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 560-2022-00307.

On behalf of the Commission,

David Davis
Acting District Director

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

**Cc:**
Dwight Crawford
Centene
7700 Forsyth
University City, MO 63105

Joseph M Wientge, Jr.
Littler Mendelson, P.C.
600 WASHINGTON AVE STE 900
Saint Louis, MO 63101

Erin Fowler
7700 Forsyth Blvd
Saint Louis, MO 63105

Llinus Baker
Llinus L. Baker Attorney
6732 W 185th Terr.
Stilwell, KS 66085


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 560-2022-00307 to the District Director at David Davis, 1222 Spruce St Rm 8 100

St Louis, MO 63103.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue.  After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.



MISSOURI DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS
# MISSOURI COMMISSION ON HUMAN RIGHTS

| MICHAEL L. PARSON | ANNA S. HUI | TIMOTHY FABER, DMIN. | ALISA WARREN, PH.D. |
|---|---|---|---|
| GOVERNOR | DEPARTMENT DIRECTOR | COMMISSION CHAIR | EXECUTIVE DIRECTOR |

Catherine A. Hon
1 Morehead Court
Valley Park, MO 63088
*Via Complainant Attorney Email*

## NOTICE OF RIGHT TO SUE

RE:    Catherine A. Hon vs. CENTENE CORPORATION
       E-01/22-53594  28E-2022-00331

The Missouri Commission on Human Rights (MCHR) is terminating its proceedings and issuing this notice of your right to sue under the Missouri Human Rights Act because you have requested a notice of your right to sue.

This letter indicates your right to bring a civil action within 90 days of the date of this notice against the respondent(s) named in the complaint. Such an action may be brought in any circuit court in any county in which the unlawful discriminatory practice is alleged to have occurred, but it must be brought no later than two years after the alleged cause occurred or its reasonable discovery. Upon issuance of this notice, the MCHR is terminating all proceedings relating to the complaint. No person may file or reinstate a complaint with the MCHR after the issuance of a notice of right to sue relating to the same practice or act. You are hereby notified of your right to sue the Respondent(s) named in your compliant in state circuit court. **THIS MUST BE DONE WITHIN 90 DAYS OF THE DATE OF THIS NOTICE OR YOUR RIGHT TO SUE IS LOST.**

You are also notified that the Executive Director is hereby administratively closing this case and terminating all MCHR proceedings relating to it.  This notice of right to sue has no effect on the suit-filing period of any federal claims. This notice of right to sue is being issued as required by Section 213.111.1, RSMo, because it has been over 180 days after the filing of the complaint and MCHR has not completed its administrative processing.

### NO RIGHT TO SUE AS TO RETALIATION FOR REQUESTING ACCOMMODATION(S) BECAUSE OF LACK OF JURISDICTION

The Missouri Commission on Human Rights (MCHR) has determined that it lacks jurisdiction over your allegations of Retaliation/For Requesting Accommodation(s) because retaliation for requesting accommodation(s) isn't an activity protected from Retaliation by the Missouri Human Rights Act. Therefore, MCHR is administratively closing this case with regard to these allegations as well and terminating all MCHR proceedings relating to these allegations.  If you are aggrieved by this decision, then you can appeal by filing a petition under § 536.150 of the Revised Statutes of Missouri in state circuit court. Any such petition must be filed in the Circuit Court of Cole County.

Note:  that if this complaint is dually filed with the Equal Employment Opportunity Commission (EEOC), then the EEOC will process this allegation under federal law: MCHR's determination does not abridge any notice of right to sue you may be entitled to receive from the EEOC.

Respectfully,

Alisa Warren, Ph.D.                                July 5, 2022
Executive Director

C:    additional contacts listed on next page

☒          ☐          ☐          ☐

| JEFFERSON CITY OFFICE | ST. LOUIS OFFICE | KANSAS CITY OFFICE | SIKESTON OFFICE |
|---|---|---|---|
| 421 E. DUNKLIN STREET | 111 N. 7TH STREET, SUITE 903 | P.O. BOX 1129 | 106 ARTHUR STREET, SUITE D |
| P.O. BOX 1129 | ST. LOUIS, MO 63101-2100 | JEFFERSON CITY, 65102-1129 | SIKESTON, MO 63801-5454 |
| JEFFERSON CITY, MO 65102-1129 | PHONE: 314-340-7590 | FAX: 816-889-3582 | FAX: 573-472-5321 |
| PHONE: 573-751-3325 | FAX: 314-340-7238 | | |
| FAX: 573-751-2905 | | | |

*Missouri Commission on Human Rights is an equal opportunity employer/program. Auxiliary aides and services are available upon request to individuals with disabilities.*
TDD/TTY:    1-800-735-2966 (TDD)    Relay Missouri: 711
www.labor.mo.gov/mohumanrights    E-Mail: mchr@labor.mo.gov

Electronically Filed - St Louis County - September 07, 2022 - 09:12 AM

RE:     Catherine A. Hon vs. CENTENE CORPORATION
E-01/22-53594  28E-2022-00331

CENTENE CORPORATION
7700 Forsyth Boulevard
Saint Louis, MO 63105
*Via Respondent Contact Email*

Kimberly Yates
Littler Mendleson
600 Washington Avenue, Suite 900
Saint Louis, MO 63101
kyates@littler.com

Linus L Baker
Attorney at Law
6732 W. 185th Terrace
Stilwell, KS 66085
linusbaker@prodigy.net

# IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
## STATE OF MISSOURI

Catherine A. B. Hon

\*

Andrew H. Dietrich

                    Plaintiffs

v.

Centene Corporation
Serve Registered Agent:
C T Corporation System
120 South Central Ave
Clayton, MO 63105

\*

Unknown Individual Titled "Absence Management"

\*

Unknown Individual 2

                    Defendants

No: 22SL-CC03517

JURY TRIAL DEMANDED

Amended Petition

    COMES NOW Plaintiff Catherine Hon and Andrew Dietrich, pursuant to Missouri Supreme Court Rules 53.01 and 55 and RSMo § 213.111, to allege the following against each Defendant in support of their respective claims for relief.

## INTRODUCTION

1. In October of 2021, Centene Corporation (Centene) published a *quid pro quo* condition for the continued employment all of its employees: consent to multiple experimental[1] mRNA novelty drugs called "Covid-19 vaccine" injections or else be subject to employee discipline and termination.  Centene would not impose the condition if Centene approved a medical or religious exemption request by the employee.

---

[1] At the end of 2020 and beginning of 2021, the Food and Drug Administration (FDA) approved three vaccines pursuant to the federal Emergency Use Authorization (EUA) statute, 21 U.S.C. § 360bbb-3: the Pfizer BioNTech, Moderna, and Johnson & Johnson (Janssen) vaccines.  Products granted an EUA, by definition, have not yet been proven safe and effective.

**1**

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

2. There are many facts related to these mRNA vaccines: they don't stay at the injection site by instead travel throughout the body and accumulate in various organs; mRNA-based COVID vaccines induce long-lasting expression of the SARS-CoV-2 spike protein in many organs; vaccine-induced expression of the spike protein induces autoimmune-like inflammation; and vaccine-induced inflammation can cause grave organ damage, especially in vessels, sometimes with deadly outcome.

3. Putting all of that aside, they were tested using aborted fetal cells, something that Catie Hon's and Andrew Dietrich's religious convictions find repugnant.

4. After Catherine was terminated she filed an EEOC charge against Centene. Centene responded claiming that "Centene had legitimate, non-discriminatory reasons for its actions. Namely, it implemented the Policy and accommodation process to mitigate the spread of COVID-19 and to protect its employees (and the community at large)."

5. Yet just before Centene published its modified Covid-19 policy to require Covid-19 vaccine injections on October 11, 2021, the U.S. Centers for Disease Control and Prevention ("CDC") Director, Dr. Rochelle Walensky, stated on October 8, 2021, about COVID-19 vaccines that the vaccines never prevented transmission: "what they cannot do any more is prevent transmission."[2]

6. The process Centene created was theatre and pretext. Neither plaintiff, who were remotely working employees of Centene, never received a fair and particularized evaluation "to the person." Instead, in response to the many religious accommodation requests and appeals, in denying those requests and appeals Centene relied on an almost-identical verbiage, a template, a form rejection.

7. Centene's policy was intended and designed to coerce each employee into surrendering their respective rights to bodily autonomy, informed consent, and to refuse medical treatment. The mandate did so by threatening the employee's livelihood.

8. Each plaintiff has a federal statutory right to decline administration of an experimental pharmaceutical approved only for emergency use. *See* 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III). Federal law allows the plaintiff to make that choice based on their perception of the likely medical consequences alone.

9. There was no claim by Centene that a plaintiff consenting to multiple COVID-19 vaccine injections was, in any way, related to a plaintiff's job duties.

---

[2] CDC Director, Dr. Rochelle Walensky, Oct. 8, 2021, available at: https://youtu.be/swlUv2SbmT8.

2

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

10. Centene's vaccine policy flies in the face of federal law, which explicitly eschews forcing people to take products authorized for emergency use only (EUA products). *See* 21 U.S.C. § 360bbb-3. On its face, the statute vests the decision of whether to take an unapproved drug with the person who is advised to take it and gives such a person an unfettered option to withhold informed consent and refuse the medication.

11. Centene's mandate vitiates this statutory right. By predicating continued employment on consenting to injecting EUA vaccines, Centene's mandate impedes the purpose and intent of the governing statute, and it is therefore intrinsically irrational.

12. The mandate explicitly and categorically refused to consider immunity acquired through prior infection as a substitute for vaccination. Those who declined to consent to the vaccine injections were subject to discipline, including termination from employment.

13. Andy contracted Covid in February 2020. Catherine had contracted Covid in the fall of 2021. But in doing so both Andy and Catherine developed natural immunities, a much better and long-lasting immunity than that generated by a vaccine. Natural immunity confers longer lasting and stronger protection against infection, symptomatic disease and hospitalization caused by the Delta variant of SARS-CoV-2, compared to the BNT162b2 two-dose vaccine-induced immunity.[3]

14. The scientific knowledge at that time rendered Centene's vaccine mandate irrational for many reasons: one of which it failed to exempt the naturally immune.

15. Unlike other companies associated with providing medical and hospital services, and contrary to its obligations under Title VII, Centene established a religious exemption review process which failed to individually and properly assess each application for religious exemption including each plaintiff.

16. Instead, Centene predetermined by a percentage and then established a coercive process calculated to coerce or otherwise force Centene employees to abandon their religious objections by consenting to Covid-19 vaccine injections against those sincere religious convictions.

---

[3] *See* David Rosenberg, Natural Infection vs. Vaccination: Which Gives More Protection?, ISRAELNATIONALNEWS.COM (July 13, 2021), available at https://www.israelnationalnews.com/News/News.aspx/309762 (last visited June 28, 2022) (those who received BioNTech Vaccine were 6.72 times more likely to suffer subsequent infection than those with natural immunity); Nathan Jeffay, Israeli, UK Data Offer Mixed Signals on Vaccine's Potency Against Delta Strain, TIMES ISR. (July 22, 2021), available at bit.ly/3xg3uCg (last visited June 28, 2022) (declining efficacy of Pfizer protection against infection).

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

17. Centene claimed to the EEOC that it "retained hundreds of employees who requested religious exemptions" but did not say whether these "retentions" were permanent. And there was no information provided to the EEOC so that the EEOC could evaluate the percentage employees who were granted from the total of employees making religious accommodation requests.

18. Those reasons provided to the EEOC are false and pretextual: plaintiffs worked from home. There were no Centene employees to protect or for that matter the public: Catherine worked alone at a computer in her residence.

19. So contrary to Centene's so-called agenda to protect others,[4] Centene employees in fully remote positions with no person contact such as the plaintiff Catherine were required to comply. Centene provided rote, contrived, and arbitrary denials to other Centene employees besides these plaintiffs requesting a religious accommodation like this one:

> Denial: Does Not Meet Legal Standard
> The information you submitted in support of your religious accommodation request does not meet the legal standard. The majority of your stated views are non-religious beliefs under applicable state and federal law that are essentially philosophical, social, political, health concerns and/or personal preference that are not protected by law or a basis for a religious accommodation.
> As a result, you are not eligible for a religious accommodation and your vaccine exemption request is denied.

20. The plaintiff Catherine had been employed by Defendant from 2014 to 2019, then rehired on August 24, 2020, as a salaried employee. After being hired, the defendant Centene instituted a Covid 19 vaccination policy while she was pregnant.

21. This policy provided a testing option in leu of consenting to multiple Covid-19 vaccine injections.

22. The plaintiff worked from her home office with her job description as providing recommendations to users and IT person. *See* 29 CFR §541.502 (employer's place of business includes an employee's home office).

23. Catherine's job description was largely IT and allowed her to work from home with no physical contact with the public or with Centene personnel.

---

[4] These Covid-19 vaccines provided zero transmission protection to others – it did nothing to prevent the transmission of the virus as the CDC now concedes in its revised guidance.

4

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

BRIEF OVERVIEW OF PLAINTIFFS' KEY CLAIMS AND CONTENTIONS
UNDER THE MISSOURI HUMAN RIGHTS ACT AND TITLE VII

24. Under Title VII if an employee seeks a religious accommodation the employer cannot summarily impose employer-preferred workplace rules which abridge an employee's sincerely held religious beliefs without genuine and good-faith dialogue and consideration of proposed accommodations and objective evidence.

25. In that regard, Centene upended Title VII's requirements and sought to capitalize on the COVID-19 vaccines' existence as justification to run rough-shod over its legal obligations and summarily threaten with termination, and then termination, scores of employees such as Catherine.

26. In response to Catherine's religious accommodation request, Centene never claimed that granting her a religious accommodation in working from her home would create any risk to anyone – in the workplace or in client or patient safety. Centene never claimed it would suffer any undue hardship in providing Catherine an exemption from its vaccine mandate. Such a claim would be pretextual in any event.

27. Centene has never sought to support its vaccination mandate through any examples of how remote staff or those who provide telehealth or telemedicine services outside of Catherine's home setting transmit the virus and impact clients, patients, or Centene employees. Nor has Centene explained how the many employees denied religious exemptions who were in non-client/patient facing positions increased risk to those clients, patients, or fellow employees.

28. Instead, Centene fancied itself as the religious police, prosecutor, and judge who could and would determine whether Catherine really did have a good enough religious conviction about consenting to the multiple Covid-19 vaccine injections.

29. Clinical reports and studies indicate that individuals with a prior infection and natural immunity face an elevated risk of adverse effects from the vaccine, compared with those who have never contracted COVID-19. Centene never acknowledged heightened risks to employees who had recently or was concurrently been infected with a Covid-19 virus.[5]

---

[5] The heightened risk of adverse effects appears to result from "preexisting immunity to SARS-CoV-2 which may trigger unexpectedly intense, albeit very rare, inflammatory and thrombotic reactions in previously immunized and predisposed individuals." Fabio Angeli et al., SARS-CoV-2 Vaccines: Lights and Shadows, 88 EUR. J. INTERNAL MED. 1, 8 (2021), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8084611/ (last visited June 29, 2022); see also Jennifer Block, Vaccinating people who have had covid-19: why doesn't natural immunity count in the US?, BRITISH MED. J. (Sept. 13, 2021), available at

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

30. Individuals who have been previously infected may cause "exhaustion" and in some cases even a deletion, of T-cells," leading to a depleted immune response.[6]

31. At the time of Centene's denials of religious exemptions, the FDA acknowledged that while it was hoped that the COVID-19 vaccines would reduce or prevent the transmission of the virus, "the scientific community does not yet know if the COVID-19 Vaccines will reduce such transmission."[7]

32. A CDC study released in January not only demonstrated that vaccination provides no discernible benefit to the naturally immune, but it provided conclusive evidence that naturally acquired immunity confers superior protection against the Delta variant (including against transmission).[8]

33. It is because of these additional immunity mechanisms that new variants of COVID-19 resulting from the virus's mutation are unsuccessful in defeating natural immunity but are able to evade vaccines which only target the spike-protein of the original Wuhan variant.

34. Moreover, many employees such as Catherine were subjected to unwelcomed harassment due to their request for religious exemption. For them, their supposedly confidential religious exemption request generated ridicule by other Centene supervisors and associates and subjected those seeking religious exemptions to

---

https://www.bmj.com/content/374/bmj.n2101 (last visited June 23, 2022) (citing several experts and studies establishing that those who have previously been infected are more likely to experience adverse side effects from the vaccine).

[6] Alysia Finley, Why the Rush for Toddler Vaccines, WALL ST. J. (July 4, 2022) ("Scientists are also discovering that triple-vaccinated adults who were previously infected with the Wuhan variant have a weaker immune response to Omicron, leaving them more susceptible to reinfection. This phenomenon, called 'immunological imprinting,' could explain why children who received three Pfizer shots were more likely to get reinfected.")

[7] *See, e.g.,* Pfizer-BioNTech COVID-19 Vaccine Frequently Asked Questions, Food and Drug Administration, available at: https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/pfizer-biontech-covid-19-vaccine-frequently-asked-questions.

[8] Tomás M. León et al., COVID-19 Cases and Hospitalizations by COVID-19 Vaccination Status and Previous COVID-19 Diagnosis—California and New York, May-November 2021, CDC (Jan. 29, 2022), available at https://www.cdc.gov/mmwr/volumes/71/wr/ mm7104e1.htm (last visited June 29, 2022) ("infection-derived protection was greater after the highly transmissible Delta variant became predominant, coinciding with early declining of vaccine-induced immunity").

6

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

unwelcomed harassment regarding Catherine's and other employees' requests. Instead of this ridicule being properly addressed, it was created, ratified, and encouraged by Centene.

## PARTIES AND PERSONAL JURISDICTION

35. Plaintiff Andrew Dietrich was an employee of Centene.

36. On October 21, 2021, Catherine filed for leave under the Family and Medical Leave Act.   Catherine submitted a religious accommodation request regarding Centene's Covid 19 vaccination requirement under Title VII to Centene with an explanation of her religious beliefs. Catherine's accommodation request was rejected by Defendant on November 18, 2021, stating later to the EEOC that Defendant did not believe Catherine was objecting to the Covid 19 vaccine requirement solely on religious grounds but instead on secular reasons.

37. Defendant then took an adverse employment action by informing Catherine while she was on maternity leave that unless she has provided Centene proof of vaccination by December 31, 2021, or received an approved exemption, that her Defendant would consider her last day worked as of January 27, 2022,  and her employment terminated February 4, 2022.

38. Catherine gave birth December 5, 2021.

39. In violation of the Missouri Human Rights Act, Defendant discriminated against and discharged the plaintiff Catherine based on religion and sex.

40. At all times relevant hereto, Catherine is an adult female citizen of Missouri. Plaintiff was employed by Defendant to conduct business across the state of Missouri.

41. Plaintiff Catherine is a "person" as defined by RSMo § 213.010(14).

42. Defendant Centene Corporation is a foreign corporation authorized to do business in the state of Missouri with its registered agent being Corporation Service Company which can be served with legal process through its registered agent C T Corporation System 120 South Central Ave Clayton, MO 63105.

43. Defendant Centene continuously does business in Missouri through its ongoing operations.

44. Before, throughout, and after the plaintiff's employment with the defendant Centene, it employed over 500 employees in Missouri.

7

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

45. Because the defendant Centene is a corporation, it is a "person" as defined by RSMo § 213.010(15).

46. Defendant Centene is an "employer" as defined by RSMo § 213.010(8).

47. Before, throughout, and after this Plaintiff's employment with the defendant Centene, it used the services of others in exchange for pay in Missouri.

48. The defendant Centene is an "employer" as defined by RSMo § 287.030.

49. Defendant Centene is an entity which acts through its agents. It is liable for the conduct of its agents acting within the course and scope of their agency, its own negligence, the acts of its agents which Defendant knowingly ratifies, injuries incurred by its agents' performance of non-delegable duties, acts done by its agents for which the agency relationship allows or assists the agent to perform, and acts its agents take by virtue of their position with Centene.

50. Defendant Unknown Individual Titled "Absence Management" is a person.

51. "Absence Management" sent an email on January 7, 2022, from the email address of <u>COVID-19_ProofofVaccination@centene.com</u>.

52. "Unknown Individual 2" is a person who supervised, conspired with, or otherwise authorized the person "Absence Management" to send the email dated January 7, 2022, to numerous third parties revealing the vaccination status or protected health information of the plaintiff.

## JURISDICTION AND VENUE

53. Pursuant to RSMo § 508.010.4, venue is proper in this Court because Catherine was first injured by the conduct alleged herein in St. Louis County, Missouri.

54. Pursuant to RSMo § 213.111.1, venue is proper in this Court because the discrimination alleged herein occurred in St. Louis County, Missouri.

## SUBJECT MATTER JURISDICTION

55. This Circuit Court has subject matter jurisdiction over this proceeding pursuant to Article V, Section 14 of the Missouri Constitution because this is a civil case.

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

## ADMINISTRATIVE PREREQUISITES

56. Plaintiff Hon filed a Charge of Discrimination with the Missouri Commission on Human Rights ("MCHR") against the defendant Centene which the MCHR assigned the charge number E-01/22-53594; 28E-2022-00331. Defendant Centene received notice of this charge.

57. On July 5, 2022, the EEOC and MCHR issued Plaintiff a right-to-sue notice authorizing her to commence a civil action within 90 days; a copy of the notice is attached hereto and is incorporated herein by reference.

58. Monday, October 3, 2022 is 90 days from July 5, 2022.

59. This action was filed before October 3, 2022, within 90 days of the EEOC/ MCHR's issuance of the plaintiff's right-to-sue notice, and within two years of the discrimination alleged herein.

60. This action has been timely filed, and the plaintiff has exhausted all her administrative remedies.

61. Plaintiff Andrew Dietrich filed an EEOC charge (560-2022-00307) on April 25, 2022.  Centene received notice of this charge.

62. On August 23, 2022, the EEOC issued the plaintiff Dietrich a right-to-sue notice authorizing him to commence a civil action within 90 days; a copy of the notice is attached hereto and is incorporated herein by reference.

## FACTUAL ALLEGATIONS

63. The above allegations are incorporated as fully set out.

64. Andrew Dietrich (Andy) a remotely working employee of Centene, was terminated from his employment with Centene February 4, 2022 because he did not consent to becoming "fully vaccinated" as was required by Centene's new policy.

65. Andy was not required to consent to being injected with any vaccines when he began working for Centene in 2010.

66. Andy requested a religious exception.  His religious exemption stated in part the following:

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

- Explain in detail why you are requesting this religious exemption and the religious principle(s) that guide your objection to vaccination.

  I have had "Covid" and my God given immunity allowed me and all of my loved ones to survive it without this intervention
  I am objecting to taking the Covid injections as a follower of God and feel that my body is a temple for the Holy Spirit
  My undertsanding is that there are materials within these injections (Human Fetal Tissue) and this is against my beliefs
  God wants us to seek the truth lack of research, long term outcomes, and detailed contents of these injections John 8:32

- Provide the basis of your sincerely held religious belief(s), practice(s), or observance(s) that form(s) your vaccination objection.

  Judgement of Consciousness - Spirtual&Moral prinicpals guided by meditation, prayer & study around this decision
  God Provides Free will, Freedom and Diversity these have guided my 20+ yrs in service to the nation and 11+ years @ CNC
  Prohibition against ingestion anything that may defile the body and hence the consciousness - 1 Corintheans 8:7
  Theraputic Proportionality is something that I have prayed on many times as a caregiver this is not a univeral obligation.

67. Andy was informed by Centene that his exemption was not approved. Andy was not informed why his request was denied and he was not asked for any additional paperwork or information.

68. Andy was in a work remote position with no orders to return to in person work. Andy did not consent to the covid-19 vaccine due to his religious beliefs and was discharged on February 4, 2022.

69. One of the Centene's management employees was told in a meeting, prior to the vaccine mandate being put into effect, that Centene pre-determined it would only approve 10-12% of exemption requests. This was stated prior to any exemption requests being submitted to the employer Centene.

70. After Andy was terminated February 4, 2022, a subsidiary of Centene, Centurion (who does face to face contact with prison staff), did not require employees to be "fully vaccinated" regarding a Covid-19 vaccine.

71. After February 4, 2022, Centene removed its vaccine mandate for employees is certain geographic locations in the U.S. and deployed non-vaccinated employees back into field service using protected measures such as masks or distancing.

72. Catherine is a Christian who sincerely believes that to consent to being injected with a Covid 19 substance called a "vaccine" would be a sin against God and a violation of her sincerely held beliefs.

73. In Centene's denial of her religious accommodation requested, it never claimed that Catherine's stated belief in paragraph 59 was not sincere.  However, Centene contended to the EEOC that Catherine was not sincere about that belief.

74. Under Catherine's knowledge and sincere beliefs, these named "vaccines" were developed or tested using fetal cells taken from aborted fetuses.  Catherine believes

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

that the commandment "thou shall not murder" and Jeremiah 1:5 statement that "Before I formed you in the womb I knew you, before you were born I set you apart and anointed you…"applies.

75. Centene never told Catherine in its denial of her religious exemption request that it believed Catherine was insincere about that belief stated in paragraph 61.

76. Catherine sincerely believes that abortion at any gestation is a grave sin; "Whoever sheds man's blood, by man his blood shall be shed, for in the image of God He made man" Gen. 9:6.

77. Catherine sincerely believes she is prohibited by both the Word and the Spirit from knowingly consenting to being injected with the Covid 19 vaccines or boosters because her body is God's holy temple.

78. Despite not making this contention to Catherine in its denial of her request, Centene offered a different reason to the EEOC for its denial: that Catherine was not sincere about her beliefs.

79. Catherine communicated her religious beliefs about Centene policy requiring her to consent to Covid-19 vaccine injections to Centene in her religious accommodation request and follow up responses to Centene.

80. Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, prohibits private employers from discriminating against their employees on the basis of—among other things—religion. 42 U.S.C. § 2000e et seq.

81. Title VII's anti-discrimination provisions apply to any employer who employs 15 or more employees for at least 20 weeks within a given year. Id. § 2000e(b).

82. Title VII defines the term "religion" broadly. It includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

83. On 8/3/2021, the defendant Centene published a written "COVID-19 VACCINATION POLICY"

84. Under that policy consenting to a covid 19 vaccination was not required but only "strongly suggested:"

> **POLICY:**
> **Vaccination Recommendation/Testing Requirement:** The Company strongly recommends that all employees be fully vaccinated against COVID-19 as soon as possible. Alternatively, employees who do not submit proof of vaccination will be required to participate in routine COVID-19 testing as determined by the Company.

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

**Non-Compliance:**
Employees who do not provide proof of vaccination will be required to participate in routine COVID-19 testing and comply with other COVID-19 protocols. Failure to comply with these protocols will result in further disciplinary action, up to and including termination of employment.

85. Under that policy a covid-19 vaccination was not required as a condition to employment but testing was if consent to the vaccine injections was not given by the employee. There was no notification to the employee of any medical or religious accommodation to that policy.

86. Centene never offered nor discussed with either plaintiff the option of routine Covid 19 testing in lieu of being "fully vaccinated" under that policy.

87. There was no notice provided in that policy as to obtaining a request for an accommodation or exemption.

88. On September 1, 2021, an "all employee meeting" was conducted by Centene. Centene's CEO Michael Neidorff stated in this video recorded meeting that anyone not getting the Covid 19 vaccination injections ought to go and see all the kids dying in hospitals because of unvaccinated people. Neidorff communicated that unvaccinated people were causing these deaths and that it was everyone's moral obligation to be fully vaccinated.

89. He stated that there was no worthy excuse for not getting injected with the Covid 19 vaccine and that Centene was now making being fully vaccinated a condition of Centene employment.

90. During an interview posted on Centene's network, Centene's Chief Medical Officer, Dr. Ken Yamaguchi, stated that Centene would be scrutinizing any accommodation requests as he believed there were no legitimate reasons to avoid being "fully vaccinated."

91. Centene's Human Resource leader stated that Centene had predetermined that only 10% of the religious accommodation requests would be approved.

92. Centene's convoluted and arbitrary exemption process was designed to discourage employees from even applying for a religious exemption.

93. Centene's exemption process created a sense of the inevitability of denials that put pressure on employees to not seek an exemption or to those who had sought religious exemptions to capitulate and consent to the multiple vaccine injections.

94. On 9/14/2021, Catherine submitted to the defendant a completed religious exemption form and an attached letter. The form stated the following:

**12**

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

**Religious Belief(s)**

In the space below, please provide a personal written and signed statement detailing the following:

- What religion do you practice that forms the basis of your belief against vaccination?

  I am a Christian.

- Explain in detail why you are requesting this religious exemption and the religious principle(s) that guide your objection to vaccination.

  After prayerful consideration, I have been lead by the Holy Spirit to decline the COVID-19 shots. I believe that to take any of the available COVID-19 shots would be a sin against God. Sin being any action contrary to the will of God as impressed upon me through his word (the Bible) and/or by the direction given to me through prayer by the Holy Spirit. I believe that the COVID-19 shots were developed and tested by means of sin (murder) and the Holy Spirit prohibits me from their use.

- Provide the basis of your sincerely held religious belief(s), practice(s), or observance(s) that form(s) your vaccination objection.

  I believe that all human beings are image bearers of God, and our bodies the temple of the Holy Spirit; this concept affirms the unique value and sanctity of human life. Mindful of the sixth commandment, "you shall not murder" I believe that abortion at any stage of development is a grave sin. Since I'm aware all COVID-19 shots were developed or tested using aborted fetal tissue, I am prohibited by the Word and the Spirit from partaking in their use on my body, Gods temple.

- Any additional relevant information.

  See attached letter.

Request for Religious COVID-19 Vaccination Exemption                                            Page 3 of

95. The attached letter to that form stated the following:

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

9/14/2021

To whom it may concern,

After prayerful consideration and biblical study, I have been led by the Holy Spirit to decline the COVID-19 injections. Therefore, I am seeking religious exemption from the COVID-19 vaccination/injection requirement for employment at Centene Corporation per Title VII of the Civil Rights Act of 1964.

I believe that to take any of the available COVID-19 injections would be a sin against God and a violation of my sincerely held beliefs. Sin is any action contrary to the will of God as he has impressed upon his people through the Bible and through the workings of the Holy Spirit on our conscience in prayer. Romans 14:23 states "But whoever has doubts is condemned if they eat, because their eating is not from faith; and everything that does not come from faith is sin." My partaking of any of these vaccines would not be from faith, and therefore a sin.

Mindful of the 6th commandment "You shall not murder" and Jeremiah 1:5 "Before I formed you in the womb I knew you, before you were born I set you apart and anointed you...", I believe that abortion at any gestation is a grave sin; "Whoever sheds man's blood, by man his blood shall be shed, for in the image of God He made man" Gen. 9:6. Since I am aware that all available COVID-19 injections were developed and/or tested using aborted fetal tissue (HEK-293: A kidney cell line that was isolated from an aborted Fetus used in testing of Moderna and Pfizer/BioNTech and PER.C6: a retina cell line derived from an 18 week old aborted fetus used in the development of the Johnson & Johnson shot) I am prohibited by both the Word and the Spirit from partaking in their use on my body, Gods holy temple; 1 Corinthians 3:16-17: "Do you not know that you are a temple of God and that the Spirit of God dwells in you? If any man destroys the temple of God, God will destroy Him, for the temple of God is holy, and that is what you are." & Exodus 23:7 "Keep far from false charge, and do not kill the innocent and righteous, for I will not acquit the wicked".

I ask that in light of these beliefs my religious exemption be respected in alignment with Title VII and I would be deemed exempt from the current COVID-19 vaccination/injection/therapy requirement.


Sincerely,

*Catherine A. B. Hon*

Catherine A. B. Hon

96. Although Centene never said this to Catherine in its denial, Centene later claimed to the EEOC that those statements "show objective signs of insincerity" which was false and not the reason provided by Centene in its denial to Catherine.

97. Although Centene never told why it denied Andy's denial, it later claimed to the EEOC that "Dietrich did not establish he had a sincerely held religious belief that conflicted with the Company's vaccine policy... his objections lacked a religious foundation."

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

98. Centene theorized that because Andy had consented to prior flu vaccines or prior immunizations, that this meant Andy knowingly consented to having substances tested with fetal cells injected into him – which was pure speculation and false.

99. For example, if an orthodox Jew who has a religious conviction about eating pork eats a meal unknowingly with pork ingredients, this is neither an intentional violation of that religious belief nor is it evidence of any inconsistency. The question that Centene never asked was whether Andy had ever knowingly consented to ingesting a drug he knew was developed from fetal research. But that question was never asked.

100. There was nothing in any of Catherine's communications that indicated Catherine was objecting to Centene's vaccine mandate for any reason other than a religious one.

101. In response to her religious accommodation statement and Catherine's EEOC charge, Centene told the EEOC that:

> [Catherine] failed to provide details regarding how her alleged religious beliefs impacted her daily life and admitted to behaviors that contradicted her position on the COVID vaccine, giving Centene an objective basis to question whether Ms. Hon truly had a sincerely held religious belief that conflicted with the Policy. Notably, Ms. Hon's Charge is similarly devoid of any details regarding her alleged religious beliefs and how they supposedly conflict with the Policy.

102. Centene's contention is pretextual, false, and deliberately ignores or otherwise misconstrues Andy's and Catherine's statements. It was not the reason Centene provided to Catherine on November 17, 2021, in its denial of her religious accommodation request.

103. On September 16, 2021, a Centene department vice president April Melson told Catherine on a department wide call that no Centene employees should request religious accommodations since she doubted any would get one.

104. Melson stated at the call it was because most people who submitted a religious accommodation request would not survive Centene's criteria and scrutiny. She warned them that they did not want that kind of attention.

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

105. Another speaker stated that requesting a religious accommodation for the Covid 19 vaccine would be "crazy" because the speaker thought it meant that an employee could not have taken a Tylenol which was met with a chorus of chuckles and general affirmations from managers and directors who were on the call.

106. At no time did Centene engage Andy or Catherine in a meaningful give and take discussion about potential accommodations for her. Catherine tried to engage Centene in dialogue, asked questions but her questions were ignored.  There were no face-to-face or verbal meetings on providing her a religious exemption accommodation except only to attempt to convince her to follow Centene's view of religion and not to follow her religious convictions. Due to Centene's plan or disinterest in communicating with Catherine about her request for religious exemption there was:

   a. No discussion about what mitigation measures either plaintiff used to prevent COVID-19 transmission at their homes;
   b. No discussion about what mitigation measures either would be willing to use to prevent COVID-19 transmission;
   c. No discussion about the level of mitigation measures employed by Centene in plaintiff's home in order to prevent COVID-19 transmission;
   d. No discussion about statistical data relating to transmission rates in a plaintiff's home;
   e. No discussion about what parts of Centene's facilities a plaintiff might be willing to avoid (such as breakrooms, lounges, cafeterias, waiting rooms, etc.) as an accommodation;
   f. No discussion about the frequency of COVID-19 testing a plaintiff might agree to as an accommodation;
   g. No discussion about any prior exposure of either plaintiff to the SARS-Co-V-2 virus;
   h. No discussion about antibody levels and other indicia of immunity to the SARS-Co-V-2 virus that either plaintiff might have;
   i. No discussion about either plaintiff's reliability and why a plaintiff could be depended upon to rigorously employ mitigation measures at their home;
   j. No discussion about the current level of community spread of the SARS-Co-V-2 virus;
   k. No discussion about the vaccination rate at a plaintiff's home;
   l. No discussion about the number of individuals with medical exemptions who are working remotely or at Centene;

16

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

m. No discussion about policies and procedures of Catherine who exclusively provide email or telephone services outside any Centene facility or hospital setting and who do not have direct contact with patients or other employees;

n. No discussion about policies and procedures for Catherine who provide support services outside of any hospital setting and who do not have contact with patients and staff; and

o. No discussion about the lack of SARS-Co-V-2 virus transmissions within any home office.

107. As a result, a plaintiff did not have reason to believe any of the foregoing topics or any other relevant factors was ever considered by Centene in relation to her/his religious exemption request, her/his questions, and responses, and each plaintiff reasonably believed that no such factors were considered by Centene.

108. On September 17, 2021, Centene emailed Catherine with the following questions:

| |
|---|
| 1. Provide information on how your religious beliefs guided your consideration of COVID-19 vaccination and how they impact other aspects of your life.<br>2. If you are in a member-facing role, please explain whether your religious beliefs prevent you from encouraging members to get vaccinated against COVID-19 and/or engaging in other preventative health measures.<br>3. Regardless of your role, please explain whether your religious beliefs prevent you from supporting the Company's commitment to improve the health of the community including the promotion of preventative health measures such as vaccinations.<br>4. What accommodation do you propose that will permit you to perform the essential functions of your role, protect the health and safety of our workforce, reduce the spread of COVID-19, and protect the vulnerable populations we serve? |

109. The questions were unclear and vague.   The questions were unclear to Catherine.

110. Most of those questions posed to Catherine had nothing to do with evaluating the motivation, validity, or sincerity of Catherine's beliefs. For example, question 2 asked about encouraging others to be vaccinated but Centene's analysis about Catherine's beliefs should not factor whether Catherine is willing to perform quid pro quo actions.  It is not a question about Catherine's religious convictions about being vaccine injected.

**17**

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

111. Similarly, question 3 asked for irrelevant information.  It sought some kind of commitment from Catherine to support Centene's policy on vaccinating other employees but that has nothing to do with the validity or sincerity of Catherine's religious beliefs.

112. Question 4 was similarly irrelevant. Catherine worked from home.  Irrespective, it appeared the question asked whether Catherine's religion would prevent her from supporting someone else doing something Catherine herself wouldn't do. The question had no relevancy to evaluating the validity or sincerity of Catherine's religious convictions.

113. And to the extent that anything Centene asked, it had no factual basis to question the validity, consistency, or sincerity of Catherine's religious convictions regarding consenting to Covid 19 vaccine injecting.

114. On September 21, 2021, Catherine responded to the September 17, 2022, inquisition / inquiry stating:

> Let me first say I don't know how you are qualified to judge my religion or my religious beliefs.  Is the Workplace Accommodation Team somehow trained to do this?  I don't think you all are qualified to judge my sincerity.  Nevertheless, let me provide the following answers to your September 17 email:
>
> 1. I already stated in my religious exemption statement how my religious beliefs guided me.  My religious faith informs all aspects of my life.  I don't get a Covid 19 vaccine in my personal life and don't get one at work.  Is there some specific area of my life you are interested in as to whether I carry my religious convictions into?
> 2. My position at Centene is not a member facing role.
> 3. I am unclear what it means to "support the company's commitment."  Are you asking if I endorse the companies Covid 19 policy?  Are you asking me to support something that my own religious convictions say is wrong or immoral?
> 4. It is unclear what you mean by "essential functions of my role."  I assume you mean my job description.  If you are asking me what I am asking, I am asking not to be forced to violate my religious convictions by being injected with a foreign substance called a Covid 19 vaccine.  That accommodation can be provided because you can provide it to others based upon a medical exemption – if you have granted ANY exemptions I suppose that means that individual can do what their job description indicates AND the company can still accomplish its overall Covid 19 goal.  That accommodation can be made for me as well.

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

115. Immediately after that email Catherine sent another email on September 21, 2021 stating "If you can give me further clarity on my questions, I would be happy to further respond if necessary."

116. These questions were reasonable as well as Catherine's explanations.

117. Centene never responded to those reasonable clarifying questions and did not seek any further communications about those responses.

118. On October 11, 2021, the defendant put its revised policy in writing by requiring all employees to be "fully vaccinated:"

> **POLICY:**
> **Vaccination Requirement:** The Company requires that all employees be fully vaccinated against COVID-19 as soon as possible and no later than communicated deadlines as a condition of employment.
>
> **Non-Compliance:**
> Employees who do not provide proof of vaccination will result in further disciplinary action, up to and including termination of employment.

119. In the new published policy it provided notice of a procedure to obtain a medical or religious exemption:

> **Requests for Accommodation/Exemption:**
> Requests for reasonable accommodation in the form of an exemption from the proof of vaccination requirement will be considered for employees who are unable to provide proof of vaccination due to a medical condition or sincerely held religious belief. You may request a medical accommodation by reaching out to Lincoln Financial or a religious accommodation through Ask HR via Request Central. You will be asked to provide information and/or documentation on your medical condition or sincerely held religious belief, practices or observances and requests will be analyzed on a case-by-case basis, consistent with applicable laws.

120. Under both Centene policies the defendant stated it could disclose Catherine's vaccination status to third parties, including customers, "for legitimate business purposes." Implicit in that policy was a promise by the defendant not to disclose Catherine's protected health information to third parties irrespective of whether the defendant believed it had a legitimate business purpose.

121. On October 21, 2021, Catherine filed for leave under the Family and Medical Leave Act.

122. Catherine's immediate supervisor Greg Blackshear told Catherine on a weekly basis that Centene would not provide her a religious exemption and then attempted to have Catherine adopt his religious convictions and reject her religious convictions and then consent to the Covid-19 vaccine injection.

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

123. Blackshear told Catherine that he was also a Christian and did not have the same religious convictions as Catherine about the Covid 19 vaccines. He informed Catherine that she should have the same religious convictions about that subject as he had.

124. Catherine responded telling Blackshear that her convictions about fetal tissue testing from aborted fetuses, that Catherine opposed abortion as abhorrent to God and that she couldn't participate or profit from the deaths of unborn children without it being a sin.

125. Catherine stated it might not be a sin to Blackshear but it was to her. Blackshear continued to badger Catherine in various communications until she sent him links to videos of Stanly Plotkin, and other articles by prolife religious groups discussing vaccines generally and some specific to the covid vaccine testing and development.

126. Catherine had also previously responded to questions posed by Centene. One question asked "Since the age of 18, have you received any vaccination(s), including flu shot(s)? ☐Yes ☐No."  Catherine check the "YES" box.  The second checkbox asked: "Since the age of 18, have you taken any over-the-counter or prescription medication? ☐Yes ☐No." Catherine checked "YES."

127. Neither question was relevant to evaluating the validity or sincerity of Catherine's religious beliefs. The question did not ask whether Catherine had consented to injections created or tested using fetal cells.  None of the questions asked whether Catherine knowingly took medications or consented to vaccine injections that were tested or created from aborted fetal cells.

128. When one Centene employee was asked about whether she took over-the-counter or prescription medications in association with her religious exemption request, that employee refused to answer that question and was still granted a religious exemption by Centene.

129. On November 16, 2021, the defendant Centene through Lauren Liddell emailed Catherine the following:

Here, in HR Workplace Accommodations, we have reviewed your religious accommodation vaccine exemption request, and need clarification to understand the apparent inconsistency between your objection to receiving the vaccine due to your stated religious belief of not partaking in the use of Covid – 19 shots because they were developed or testing using aborted fetal tissue with your stated actions of taking past vaccine(s) and medications since age 18.  Please explain.

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

130. But there was nothing inconsistent whatsoever as to what Catherine had said in those answers. On November 16, 2021, Catherine responded with the following:

> Your claim that my religious objection to the covid 19 vaccine appears inconsistent is unclear. Are you claiming any unidentified medication I took was manufactured using fetal cells? You have no factual basis for that conclusion and this demonstrates bad faith. The fact I have taken any medication doesn't at all correlate to your conclusion that all medications are developed from fetal cells.
> And the idea that I took a vaccination or flu shot is similar. Not all flu shots and vaccines are created equally. Then if I did possibly take a medication or was injected with something that I didn't know was developed from fetal cells, then that isn't inconsistent either. I know the Covid 19 vaccines are developed that way.
> So your assumptions and conclusions are just that -- everything I have explained and done is perfectly consistent with my religious convictions about abortion, fetal cell research, and my participation in that.
> If you have further questions in this inquisition, let me know

131. Those questions were reasonable. The dialogue Catherine engaged in was reasonable.

132. Centene never asked Catherine if she knowingly took any medications or was knowingly injected with any substances that she knew were tested or created from fetal cells.

133. Nothing that Catherine stated to Centene concerned other so-called philosophical, social, political, health, or personal preference reasons for objecting to consenting to vaccine injecting with a Covid-19 vaccine.

134. Centene deceptively and falsely told the EEOC that nothing Catherine told Centene provided "substantive information to establish a sincerely held religious belief that conflicted with" Centene's vaccine policy.

135. On the next day, November 17, 2021, the defendant emailed Catherine stating that her 9/14/2021 religious accommodation request to be exempt from the defendant's Covid 19 vaccination requirements was denied. It stated:

> **Denial: Does Not Meet Legal Standard**
>
> - The information you submitted in support of your religious accommodation request does not meet the legal standard. The majority of your stated views are non-religious beliefs under applicable state and federal law that are essentially philosophical, social, political, health concerns and/or personal preference that are not protected by law or a basis for a religious accommodation.
> - As a result, you are not eligible for a religious accommodation and your vaccine exemption request is denied.

21

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

136. In that response Centene did not claim that Catherine's religious beliefs were insincere or did it make any of those statements to the EEOC in response to Catherine's EEOC Charge.

137. Contrary to Centene's denial email, Catherine had never offered any information stating that her objection was anything but one arising from a religious conviction.

138. Centene had deliberately misinterpreted and then falsely claimed that Catherine had claimed other reasons than what was stated in her religious accommodation request and responses.

139. Centene used the same mechanized, mass-produced email language to other Centene employees in denying their religious requests.

140. Centene used this same perfunctory boilerplate copy-and-paste language to deny other Centene employees a religious accommodation to its Covid-19 vaccine injection policy.

141. The defendant never claimed that providing Catherine or Andy a religious accommodation would constitute a hardship upon Centene.

142. In the denial email, it stated that Catherine had the following choices:

---

**Action Required**
You have the following choices:

1. If you choose to remain unvaccinated, beyond the 12/31/2021 deadline communicated by the Company, you will be in violation of our vaccination policy which requires proof of full vaccination.
2. You are encouraged to begin the vaccination process as soon as possible, given that it may take 3-5 weeks from the date of the first COVID-19 vaccination shot to become fully vaccinated.

   - 
   - Should you choose to become vaccinated, you will be compensated for time taken off work to receive your vaccination(s). Please schedule time off with your People Leader and account for this time using the "COVID-Vaccine" pay code.

---

143. And not to be overlooked was the fact Centene was giving Catherine a timeline of compliance while on maternity leave. Centene was taking adverse employment actions against Catherine in changing the policy. Centene's illusory exemption process was not a legitimate individualized assessment. It was either an utter disaster of organization, coupled with a callous refusal to reasonably communicate with employees like Catherine seeking religious exemptions, or a calculated effort to game employees into not pursuing their legal rights.

144. Catherine appealed to the defendant that denial. Catherine complained that Centene had failed to engage in good faith dialogue. Catherine stated:

22

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

> I am appealing this decision on the grounds that numerous questions I asked in order to gain clarity on the questions asked by HR went unanswered. I completed the initial form and submitted a personal letter, then was sent additional questions which were unclear and I asked for clarification on them….no one replied. After two months I followed up, received one additional question to which I responded, no answers to my previous queries, and then a swift denial. No attempt at a dialogue or to clarify was made on the part of Centene whatsoever. Attached are the questions I submitted in response to the second set of questions which went unanswered.
>
> Furthermore, the denial reason does not in any way align with the information I submitted. My sole concern which has been reiterated throughout this process is to avoid sinning against God. I am a Christian who strives to align myself with His law and wisdom as taught by the Bible and guided by the Holy Spirit. This impacts a menagerie of daily decisions too numerous to list, but includes the words I use, how my time is spent, and how I am to view and treat my body and mind. To deny my accommodation request as "non religious" is preposterous. I have attached my personal letter explaining my reasoning for avoiding the Covid-19 vaccinations in detail again for a second review as nothing I have said or done implies any motive other than those stated within this letter.

145. Catherine's appeal was denied Centene in an email written by Centene employee Kevin Sweeney in an November 19, 2021 email to Catherine.

146. The defendants Centene, Absence Management, and Unknown Individual 2 communicated to Catherine on January 7, 2022, while she was on maternity leave, that her last day worked would be deemed January 27, 2022, and that her employment was terminated February 4, 2022, even though her maternity leave would not be completed until February 27, 2022.  The email stated in part that:

> **Your proof of vaccination deadline was December 31, 2021. You did not submit proof of COVID-19 vaccination or obtain an approved exemption** (or an exemption has expired or is expiring soon) **by the deadline and are in violation of Centene's COVID-19 Vaccination Policy.**  Your last day worked will be January 27, 2022, and your pay through and termination date will be February 4, 2022.

147. In that email Catherine's protected health information and identity was revealed by the defendant to each of the 48 other recipients who received that email:

| From: | COVID-19_ProofofVaccination | | | | <COVID- |
|---|---|---|---|---|---|
| 19_ProofofVaccination@centene.com> | | | | | |
| Date: | Fri, | Jan | 7, | 2022 | at | 1:23 | PM |
| Subject: | Proof | of | Vaccination | Not | | Submitted |

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

To:         SLGRENGA@AOL.COM            <SLGRENGA@aol.com>,
BDORROUGH520@GMAIL.COM            <BDORROUGH520@gmail.com>,
ANDREANAPICKETT@GMAIL.COM      <ANDREANAPICKETT@gmail.com>,
ECRUZSOLORIO@GMAIL.COM            <ECRUZSOLORIO@gmail.com>,
IAMSTEPHANIE_2@ICLOUD.COM      <IAMSTEPHANIE_2@icloud.com>,
STEPHANSKY_01@YAHOO.COM            <STEPHANSKY_01@yahoo.com>,
MAHOGANYFORD@YAHOO.COM            <MAHOGANYFORD@yahoo.com>,
MYRAWOODWARD06@GMAIL.COM      <MYRAWOODWARD06@gmail.com>,
CATIE.HON@GMAIL.COM  <CATIE.HON@gmail.com>,  OSRD11@GMAIL.COM
<OSRD11@gmail.com>,                    UPS05ALTIMA@YAHOO.COM
<UPS05ALTIMA@yahoo.com>,               AJSME2000@YAHOO.COM
<AJSME2000@yahoo.com>,     TEELOVA1@AOL.COM      <TEELOVA1@aol.com>,
PRINCESSNYA2007@AOL.COM            <PRINCESSNYA2007@aol.com>,
AAANGELAWI@GMAIL.COM               <AAANGELAWI@gmail.com>,
MAGDOLINE.HABIB@GMAIL.COM      <MAGDOLINE.HABIB@gmail.com>,
CRYSTALMARISCAL@LIVE.COM       <CRYSTALMARISCAL@live.com>,
PREVILONK@GMAIL.COM                 <PREVILONK@gmail.com>,
MAZIESTONER5@GMAIL.COM            <MAZIESTONER5@gmail.com>,
OTOCALI@AOL.COM       <OTOCALI@aol.com>,    TORREZK66@GMAIL.COM
<TORREZK66@gmail.com>,             ALANIA20ALLIE16@ICLOUD.COM
<ALANIA20ALLIE16@icloud.com>,        WOODLEY.TRISH@YAHOO.COM
<WOODLEY.TRISH@yahoo.com>,            KIMORAPAPI@GMAIL.COM
<KIMORAPAPI@gmail.com>,            BOVIANTERRENCE@GMAIL.COM
<BOVIANTERRENCE@gmail.com>,            DES.ROBBINS@GMAIL.COM
<DES.ROBBINS@gmail.com>,            SUSANKJONES.SKJ@GMAIL.COM
<SUSANKJONES.SKJ@gmail.com>,            LCLEONE16@GMAIL.COM
<LCLEONE16@gmail.com>,                  JCBYRD17@YAHOO.COM
<JCBYRD17@yahoo.com>,               JOYOUSBIGGINS@GMAIL.COM
<JOYOUSBIGGINS@gmail.com>,         Milton       N.       Vega
<MILTON.N.VEGA@healthnet.com>,      GODSDAUGHTER0407@YAHOO.COM
<GODSDAUGHTER0407@yahoo.com>,               AMR1990@ME.COM
<AMR1990@me.com>,              JESSICA.PIERCE52116@GMAIL.COM
<JESSICA.PIERCE52116@gmail.com>,   KEMBERLYRICHARDS@GMAIL.COM
<KEMBERLYRICHARDS@gmail.com>,            JONELLECO@GMAIL.COM
<JONELLECO@gmail.com>,               LWILLIS2000@GMAIL.COM
<LWILLIS2000@gmail.com>,              LKLYLE0616@ICLOUD.COM
<LKLYLE0616@icloud.com>,             ANGELCAT1997@GMAIL.COM
<ANGELCAT1997@gmail.com>,             DONNACRS31@YAHOO.COM
<DONNACRS31@yahoo.com>,               BIGDONDON55@GMAIL.COM
<BIGDONDON55@gmail.com>,               AMAIRA.RAJA@YAHOO.COM
<AMAIRA.RAJA@yahoo.com>,           NAKIEYATURNER@GMAIL.COM
<NAKIEYATURNER@gmail.com>,       TAMEKA_NORVELL@YAHOO.COM
<TAMEKA_NORVELL@yahoo.com>,  LAKISHACUSHSHON86@GMAIL.COM
<LAKISHACUSHSHON86@gmail.com>,          TYCONCAL86@GMAIL.COM

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

<TYCONCAL86@gmail.com>,
<JACOBBURKE96K@gmail.com>,
<munguia824@gmail.com>

JACOBBURKE96K@GMAIL.COM
munguia824@gmail.com

Dear Employee,

Earlier this year, we initiated the new policy requiring proof of vaccination as a general condition of employment, as we are deeply committed to protecting all our communities, employees, and those who are unable to receive a vaccine due to health or age restrictions, especially young children.

**Your proof of vaccination deadline was December 31, 2021. You did not submit proof of COVID-19 vaccination or obtain an approved exemption** (or an exemption has expired or is expiring soon) **by the deadline and are in violation of Centene's COVID-19 Vaccination Policy**. Your last day worked will be January 27, 2022, and your pay through and termination date will be February 4, 2022. As communicated, all Centene employees are required to demonstrate proof of full vaccination as a general condition of employment. Employees who fail to submit proof of full vaccination are subject to disciplinary action, up to and including termination.

Upon your termination a Termination Notice will be emailed to your personal email address in Workday with additional information about how to return any company property or documents in your possession as well as information on your benefits and other matters relating to the end of your employment.

## ADDITIONAL FACTUAL ALLEGATIONS

148. Since the early days of the pandemic, three separate COVID-19 vaccines have been developed and authorized for use in the United States. The FDA issued an Emergency Use Authorization for the Pfizer-BioNTech vaccine on December 11, 2020. A week later, the FDA issued a second EUA for the Moderna COVID-19 vaccine. Finally, the FDA issued an EUA for the Johnson & Johnson COVID-19 vaccine on February 27, 2021.

149. On August 11, 2022, CDC issued new guidelines which basically admitted vaccinating and masking had no positive effect on preventing transmission of any variation of any covid virus. It stated that those exposed to a virus are no longer required to quarantine, that there is no distinction between vaccinated and unvaccinated status, and no longer recommended to screen anyone who is asymptomatic.

150. But even under the CDC guidance when Centene enacted and modified its Covid policy, CDC issued revised guidance during that time period due to new data "that

25

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

the Delta variant was more infectious and was leading to increased transmissibility when compared with other variants, even in some vaccinated individuals."[9]

151. As of October 27, 2021, the CDC's "Nowcast" model which tracked proportions of circulating variants in the United States reported that the Delta variant comprised 99.6% of the variants recently detected throughout the U.S.[10]

152. It was well understood from October 2021 when Centene published its revised vaccine mandate that the Delta variant was "spreading in settings where there is high vaccine coverage."[11]

153. These studies indicated that vaccinated individuals were susceptible to infection with the Delta variant and presented a risk of transmitting SARS-CoV-2 to others.[12]

154. The researchers in a University of Wisconsin Study within the relevant time frame concluded that, "a substantial proportion of individuals with SARS-CoV-2 vaccine breakthrough infections during [their] study period ha[d] levels of SARS-CoV-2 RNA in nasal secretions . . . consistent with the ability to transmit the virus to others."[13]

155. In other words, it was known to Centene at the relevant times that a covid-19 vaccine injected person may be as contagious as a non-vaccinated person once they contract the Delta variant[14] yet conducted itself as though vaccines prevented transmission.

---

[9] "Science Brief: COVID--19 Vaccines and Vaccination," CDC website (updated Sept. 15, 2021), available at: https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html (hereafter "CDC Brief").

[10] CDC COVID-19 Data Tracker, Variant Proportions, CDC website (for week ending Oct. 23, 2021), available at: https://COVID-19.cdc.gov/COVID-19-data-tracker/#variant-proportions.

[11] "Vaccinated and unvaccinated individuals have similar viral loads in communities with a high prevalence of the SARS-CoV-2 delta variant," University of Wisconsin (July 31, 2021) ("University of Wisconsin Study") at 1; available at: https://www.medrxiv.org/content/10.1101/2021.07.31.21261387v1.

[12] University of Wisconsin Study at 2-3.

[13] *Id.* at 2.

[14] Public Health England (Aug. 6, 2021) at 35; University of Wisconsin Study at 2-3. "Outbreak of SARS-CoV-2 B.1.617.2 (Delta) Variant Infections Among Incarcerated Persons in a Federal Prison — Texas, July–August 2021, at 3 ("During a COVID--19 outbreak in a federal prison involving the highly transmissible SARS-CoV-2 Delta variant, transmission was high among vaccinated and unvaccinated persons. . . the duration of positive serial test results was similar between these two groups, and infectious virus was cultured from both vaccinated and unvaccinated participants").

26

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

156. The inability of the COVID-19 vaccines to prevent the transmissibility of SARS-CoV-2, particularly as to highly transmissible variants of concern, was well known by Centene when it adopted its vaccine mandates and knowledge of this limitation of the vaccines was known to Centene when it forged ahead with the wholesale denial of religious exemptions claiming the religious beliefs of an employee was not religious enough, or sincere, or the real reason for the employee's request.

157. The latest peer reviewed study SERIOUS ADVERSE EVENTS OF SPECIAL INTEREST FOLLOWING MRNA COVID-19 VACCINATION IN RANDOMIZED TRIALS IN ADULTS AUGUST 31, 2022 https://www.sciencedirect.com/science/article/pii/S0264410X22010283 include researchers from Stanford University, the University of Maryland, and UCLA. The study provides the following list of confirmed adverse events (or side effects) of the respective mRNA vaccines. It also provides the risk ratios versus Covid-19 (over 1 is a factor increase, under 1 is a factor decrease).

- "In July 2021, the FDA reported detecting four potential adverse events of interest: pulmonary embolism, acute myocardial infarction, immune thrombocytopenia, and disseminated intravascular coagulation following Pfizer's vaccine based on medical claims data in older Americans…. Three of these four serious adverse event types would be categorized as coagulation disorders, which is the Brighton AESI category that exhibited the largest excess risk in the vaccine group in both the Pfizer and Moderna trials."
- "In the Moderna trial, the excess risk of serious AESIs (15.1 per 10,000 participants) was higher than the risk reduction for COVID-19 hospitalization relative to the placebo group (6.4 per 10,000 participants)"
- "In the Pfizer trial, the excess risk of serious AESIs (10.1 per 10,000) was higher than the risk reduction for COVID-19 hospitalization relative to the placebo group (2.3 per 10,000 participants)."

158. Israeli researchers in a large study conducted during the summer of 2021 (and issued in late August 2021) "in one of the most highly COVID-19–vaccinated countries in the world, examined medical records of tens of thousands of Israelis, charting their infections, symptoms, and hospitalizations between 1 June and 14 August, when the Delta variant predominated in Israel" and found natural immunity stronger and longer lasting that that induced by the Pfizer vaccine.[15]

---

[15] "Comparing SARS-CoV-2 natural immunity to vaccine-induced immunity: reinfections versus breakthrough infections," Maccabie Healthcare Services (Aug. 25, 2021) ("Israel Study") at 3.

27

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

159. The Israel Study found that "never-infected people who were vaccinated in January and February were, in June, July, and the first half of August, six to 13 times more likely to get infected than unvaccinated people who were previously infected with the coronavirus. In one analysis, comparing more than 32,000 people in the health system, the risk of developing symptomatic COVID-19 was 27 times higher among the vaccinated, and the risk of hospitalization eight times higher."[16]

160. Charlotte Thålin, a physician and immunology researcher at Danderyd Hospital and the Karolinska Institute in Stockholm who studies immune responses to SARS-CoV-2, said the Israel Study is "a textbook example of how natural immunity is really better than vaccination."[17]

161. Centene's vaccine mandate was even more encompassing than the requirements of the Centers for Medicare & Medicaid Services (CMS) of the U.S. Department of Health & Human Services interim final rule with comment ("IFC"). The IFC does not apply to those who work remotely.[18] However, Centene's mandate applied to employees such as Catherine who worked remotely from home.

162. Centene did not claim it would be an undue hardship to it to grant Catherine an accommodation – instead it rewrote her religious request, then challenged her motivation, sincerity, and validity of her religious beliefs regarding consenting to Covid-19 vaccine injecting.

163. Centene's exemption process was not consistent with EEOC guidance on private employers issuing COVID-19 vaccine mandates. *See* What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws §§ K.1 & K.2., EEOC (May 28, 2021), https://www.eeoc.gov/wysk/what-you-should-know-about-COVID-19-and-ada-rehabilitation-act-and-other-eeo-laws.

---

[16] "Having SARS-CoV-2 once confers much greater immunity than a vaccine—but vaccination remains vital," Science (Aug. 26, 2021), available at: https://www.science.org/content/article/having-sars-cov-2-once-confers-much-greater-immunity-vaccine-vaccination-remains-vital.

[17] *Id.*

[18] 86 Fed. Reg. 61,570 (Nov. 5, 2021) ("Individuals who provide services 100 percent remotely, such as fully remote telehealth or payroll services, are not subject to the vaccination requirements of this IFC").

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

## Count 1

## MISSOURI HUMAN RIGHTS ACT
## CATHERINE HON V CENTENE

164. The above allegations are incorporated as fully set out.

165. With Catherine harboring a sincere religious objection to consenting to COVID-19 vaccine injections and then denied a religious exemption, the defendant Centene has violated the Missouri Human Rights Act.

166. Plaintiff Catherine was presented with the life-altering question whether to consent to a several COVID-19 vaccination injections against her religious conscience or face discipline or termination. Very few scenarios paint a bleaker picture than giving up your livelihood in order to follow your religious beliefs.

167. Specifically, if Catherine failed to consent to the numerous COVID-19 vaccine injections, Centene considered her in violation of its policy and was then subject to employee discipline, termination, adverse employment actions, or other punishment based on the charge of employee misconduct.

168. The defendant Centene's illusory religious exemption process was designed from the beginning, and then successfully implemented, to result in the denial of all or virtually all exemption and accommodation requests. In so doing, Centene failed to engage its employees in a good faith interactive process, and failed to respect and accommodate their religious beliefs including those of the plaintiff Catherine.

169. Centene already demonstrated it could accommodate Catherine's religious objections from its original Covid 19 policy which stated it would accommodate Catherine's refusal to be vaccine injected by having her subjected to testing.

170. Centene could easily accommodate Catherine's request because she worked from home and had no physical contact with the public or with Centene personnel.

171. Centene had already predetermined an arbitrary percentage of employees who would be religiously accommodated.  The process it created and applied was a theatrical pretext to religious discrimination. *U.S. Navy SEALs 1–26 v. Biden*, --- F. Supp. 3d ----, 2022 WL 34443, at *1 (N.D. Tex. Jan 3, 2022) (the religious accommodation process proved to be nothing more than a quixotic quest for the plaintiff because it was "by all accounts … theater").

29

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

172. This Count is brought pursuant to the Missouri Human Rights Act (MHRA), Chapter 213 of the Missouri Revised Statutes.154. Section 213.055 R.S.Mo. states in part:

> It shall be an unlawful employment practice…to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's… sex…religion…to limit, segregate, or classify his employees or his employment applicants in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's … sex … religion.…

173. Defendant Centene is an employer as defined under Chapter 213 R.S.Mo.

174. Defendant Centene has violated Title VII of the Civil Rights Act of 1964 by (i) creating and maintaining a sham religious exemption application process, (ii) failing to engage in the interactive process, (iii) granting at least one individual a religious exemption and reasonable accommodation but denying the same to the similarly situated Plaintiffs and numerous other employees, and/or (iv) otherwise failing to offer the plaintiff a reasonable religious accommodation.

175. Title VII makes it unlawful to discharge or otherwise to discriminate against an individual because of that individual's religion. 42 U.S.C. § 2000e-2(a)(1). The statute defines "religion" to include "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). Importantly, once the plaintiff has established a prima facie case of discrimination, the burden shifts to the employer to make a reasonable accommodation of the religious practice or to show that any accommodation would result in undue hardship.

176. Defendant Centene never claimed providing Catherine a religious accommodation would result in an undue hardship to Centene.

177. Defendant Centene did not provide Catherine a legitimate process through which she could apply for, and receive, a religious exemption.

178. Defendant Centene's vague and generic follow up questions and its denial were based upon Centene's illusory so-called case by case or evidence-based criteria that Centene never provided Catherine in advance.

179. The questions asked of Catherine were unclear and then contained no guidance for Catherine as to any criteria Centene would be using to evaluate her religious accommodation request.

30

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

180. In its denial Centene deliberately rewrote or otherwise deliberately misconstrued the basis for Catherine's religious accommodation request and then wholly disregarded it irrespective of how many other theoretical reasons Centene conjured up that might have existed to object to the vaccine injection.

181. Thus, Centene's entire exemption application process was a sham and designed to result in mass denials, which is exactly what occurred.

182. Despite Catherine asking for clarification on the follow up questions posed to her, at no time during the application process did Centene ever bother to meaningfully engage in the interactive process.

183. At no time did Centene engage Catherine in any good faith dialogue or in any good faith attempt to investigate whether accommodations were possible. In fact, Centene never claimed accommodations were not possible – only that it believed Catherine's objections were not solely religious or religious enough for Centene's satisfaction.

184. Instead of engaging the plaintiff in good faith, Centene denied the plaintiff's religious exemption and other requests en masse, providing little more than sham copy and paste responses.

185. For example, on October 25, 2021, Centene provided the same rote copy and paste denial to another Centene employee's religious accommodation request:

> Denial: Does Not Meet Legal Standard
> The information you submitted in support of your religious accommodation request does not meet the legal standard. The majority of your stated views are non-religious beliefs under applicable state and federal law that are essentially philosophical, social, political, health concerns and/or personal preference that are not protected by law or a basis for a religious accommodation.
> As a result, you are not eligible for a religious accommodation and your vaccine exemption request is denied.

186. Centene accommodated objections based upon secular (medical) reasons and granted some religious exemptions to employee(s) who utilized the same or substantially similar religious objection as Catherine.

187. Defendant Centene harassed and discriminated against Plaintiff based upon her religion and sex.

188. Defendant Centene terminated the plaintiff because of her religion.

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

189. Defendant Centene limited, segregated, and classified the plaintiff in order to deprive her of employment opportunities and adversely affected her status as an employee because of her sex and religion.

190. The defendant discriminated against Catherine on the basis of sex. When the defendant denied Catherine's religious accommodation request, she was pregnant and had made a timely maternal leave request.

191. Catherine's baby was born December 5, 2021. Her maternity leave lasted until February 27, 2022.

192. The defendant discriminated against Catherine on the basis of religion. Defendant indicated it was deeply committed to protecting those who are unable to receive a vaccine due to health or age restrictions but Catherine worked from home making that concern irrelevant and not applicable.

193. The defendant's harassment and discrimination of the plaintiff affected terms, conditions, and/or privileges of her employment.

194. Defendant Centene communicated with its supervisors to persuade or otherwise talk employees out of following their respective religious convictions and was further aware of the harassment and discrimination inflicted on the plaintiff.

195. Defendant Centene discharged and discriminated against the plaintiff with respect to her compensation, terms, conditions, or privileges of employment, because of her religion, pregnancy, and sex

196. Plaintiff's religion was a contributing and motivating factor and the exclusive cause in the defendant Centene's discriminatory actions against her.

197. Plaintiff has suffered emotional anxiety, stress, and insomnia as a result.

198. Plaintiff suffered financial loss, incurred attorney fees and costs, decreased business opportunities, emotional pain, suffering, inconvenience, loss of enjoyment of life because of the actions of the Defendants.

199. The defendant Centene's articulated reasons for its actions were pretexts for unlawful actions.

200. The defendant Centene's conduct was outrageous because of the defendant Centene's evil motive or reckless indifference to the plaintiff's rights.

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

201. Defendant Centene had already arbitrarily pre-determined a percentage of religious accommodations to be granted and then communicated that to employees such as Catherine to abandon or not seek a religious accommodation.

202. Defendant Centene used its employees to attempt to convince Catherine to abandon her sincere religious beliefs about Covid 19 vaccine injections.

203. The defendants improperly revealed Catherine's private protected health information to these parties.

204. The defendant did not have consent from Catherine to disclose her vaccination status or any protected health information to these third parties.

205. The defendants harassed and retaliated against Catherine by revealing her private information in the manner that was done.

206. Under the old and revised policy, the defendant Centene stated:

> The Company will obtain the employee's consent when required to do so by applicable state law before disclosing vaccination status to third parties.

207. The defendants published Catherine's private information to third parties of which she did not consent. The information published is a private matter concerning only the plaintiff which third-parties have no legitimate concern, and the publication was designed to retaliate, embarrass, and coerce Catherine.

208. Defendant took and continued to take adverse employment actions against Catherine while on maternity leave.

209. Because of the revelation to the other persons, Catherine replied to the email addresses informing them that she had filed an EEOC complaint against the defendant.

210. Defendant retaliated against Catherine for exercising her maternity and religious rights by terminating her employment and by revealing her identity and termination to the other cc'd parties.

211. Despite the Covid 19 pandemic in existence, even as late as October 11, 2021, Centene said it was prepared to accommodate its religiously-exempt employees by allowing them to indefinitely undergo routine testing.

212. And though Centene was in a health-care related field, it presented no justification for its abrupt policy change in October 2021. Patients, visitors, and even employees of other hospital groups that provide medical or religious accommodations

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

to their employees were still permitted to enter hospital or medical facilities that Centene served, just as they were before the October policy change. Under the new policy, Catherine who was terminated for being unvaccinated would nonetheless be permitted to visit any of those facilities as a patient or a guest as unvaccinated.

213. OSHA's workplace rules allows the option of masking and testing. 29 C.F.R. § 1910.501.

214. Centene refuses to acknowledge what the Missouri Human Rights Act and Title VII plainly requires. *See e.g., David Sambrano et. al. v. United Airlines, Inc.,* Case No. 4:21-01074-P (N.D. Texas. Oct. 18, 2021) (granting temporary restraining order and enjoining refusal to provide reasonable accommodation to employees with religious objections to COVID-19 vaccines); *Dr. A. v. Hochul,* No. 1:21-CV-1009-DNH-ML, 2021 WL 4734404, *9 (N.D.N.Y. Sept. 14, 2021) (granting preliminary injunction against enforcement of New York's COVID-19 vaccine mandate on healthcare workers for failure to grant religious exemptions); *We The Patriots USA, Inc. v. Hochul,* No. 21-2179, dkt. 65 (2d Cir. Sept. 30, 2021) (issuing an injunction pending appeal against enforcement of New York's COVID-19 Vaccine Mandate); *Magliulo v. Edward Via College of Osteopathic Medicine,* No. 3:21-CV-2304, 2021 WL 36799227 (W.D. La. Aug. 17, 2021) (granting temporary restraining order against a medical school for the school's failure to grant religious exemptions when reasonable accommodations were available (such as masking, testing, etc.) and mandatory vaccination was not the least restrictive means of achieving the school's interest in protecting the school's student body); *Bilyeu v. UT-Battelle, LLC,* No. 3:21-cv-352, 2021 WL 4859932, * (E.D. Tenn. Oct. 15, 2021) (granting TRO enjoining healthcare employer "from terminating or placing on indefinite unpaid leave any employee who has received a religious or medical accommodation").

215. Defendant's actions were intentional, willful, knowing, wanton and malicious, and in flagrant disregard for the rights of the plaintiff.

216. Defendant engaged in the above discrimination because of the plaintiff's pregnancy, sex, and religion.

217. Defendant's conduct directly caused the plaintiff damages, including lost wages, emotional distress, frustration, humiliation, and the deprivation of the plaintiff's civil rights under Missouri law.

218. The actions and conduct set forth herein demonstrate the defendant acted with a reckless indifference or conscious disregard for the rights of the plaintiff and others.

219. Centene:

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

a. Intentionally pursue a strategy to terminate or not grant a religious exemption for as many employees as possible who sought a religious exemption to taking a COVID-19 vaccine;

b. Failed to provide Catherine with an adequate mechanism for requesting an accommodation when it required requests to be submitted through an online system which limited the amount of information that could be provided in support of an exemption request and by an arbitrary date;

c. Failed to comply with its obligations under federal law to engage in the interactive process when responding to her accommodation request and queries;

d. Failed to comply with its obligations under federal law through providing Catherine a confusing and chaotic process for seeking a religious exemption;

e. Provided a perfunctory one-sentence justification in Catherine's denial that was pretextual;

f. Failed to comply with its obligations under federal law to reasonably accommodate Catherine with her religious objection to its vaccine mandate and to not discriminate when it offered no accommodations and denied her religious exemption request on the basis that she was not sincerely motivated, or did not have a sincere religious belief while granting medical exemption requests;

g. Statements made by Centene supervisors and leaders stating it had predetermined a percentage and that consenting to COVID-19 vaccine injections was a moral obligation was Centene's motive for its denial of employees such as Catherine's religious exemptions;

h. Engaged in religious discrimination when it told all Centene employees that there was going to be a mass denial, a limited percentage, and that they were morally required to be vaccinated and then denied a high percentage of religious exemption requests to Centene's vaccine mandate;

i. Retaliated against employees such as Catherine who engaged in protected activity when it initially responded to all or most exemption requests by denying the request and then engaging in a common pattern of conduct designed to discourage or dissuade employees from requesting (or continuing to seek) an accommodation;

j. Retaliated against employees such as Catherine who engaged in protected activity when who engaged in protected activity when it purposefully and perfunctorily denied requests for religious exemption without fully examining them.

WHEREFORE, Plaintiff prays for Judgment against the defendant Centene on Count I, finding that the defendant violated RSMo § 213.055 and awarding the plaintiff fair and reasonable damages, costs, fees, a fee enhancement, interest, and all other relief the Court may grant.

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

**Count 2**
**VIOLATION OF TITLE VII, 42 U.S.C. § 2000E, ET SEQ.**
**RELIGIOUS DISCRIMINATION—RETALIATION**
**EACH PLAINTIFF V CENTENE**

220. To the extent they do not conflict with the allegations contained in this count, each Plaintiff incorporates all other allegations of the Petition as if more fully set forth herein.

221. Title VII prohibits each defendant from retaliating against Andy and Catherine for engaging in protected activity.

222. Plaintiff engaged in protected activity when she sought maternity leave. requested (or sought to request) religious accommodations from Centene's vaccine mandate, and asked clarifying questions, and provided further responses to Centene's inquiries about the validity and sincerity of Catherine's religious beliefs.

223. Attempting to leverage access to the religious application process itself to have its supervisors attempt to talk Catherine out of following her religious convictions or otherwise require Catherine to abandon her Title VII rights and agree to the vaccine mandate is itself retaliatory and an attempt to limit the Title VII rights of Catherine.

224. Centene's actions in telling unvaccinated employees they are morally responsible for others contracting Covid or in declaring that only 10 percent of applicants would be approved or in having Catherine's immediate supervisor attempt to dissuade her from following her religious beliefs, its questions and failure to clarify it questions,  is further evidence of the lack of good faith in Centene's handling of its vaccine mandate exemption process.

225. Centene's pattern and practice of questioning employees with the same vague questions, not responding to questions, and then responding with the same perfunctory, pro forma, denials that everyone else received also supports the conclusion that no individualized inquiry was undertaken as to any religious exemptions.

226. The perfunctory rote denials, along with the lack of face-to-face or telephonic communication with Andy or Catherine about her questions or the circumstances in which she works or other relevant matters raises an inference that little or no inquiry or individualized evaluation was given to her request.

227. These actions did, and were intended to, coerce Catherine, Andy, and other employees to either forgo their religious beliefs and consent to COVID-19 vaccine injections or abandon or not fully document their applications for religious exemption.

36

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

228. Centene's rewriting of Catherine's religious accommodation request was arbitrary and not made in good faith and is evidence of that no individualized evaluation was given to her personal religious beliefs.

229. Centene's cumbersome, chaotic, and confusing religious exemption process constituted retaliation towards Andy and Catherine in seeking a religious exemption.

230. Centene's discriminatory treatment of religious accommodation requests – arbitrarily setting a 10% maximum approval standard, and its open communications stating that religious objections would not be recognized on a wholesale basis while at the same time granting requests for a medical accommodation – supports an inference that Centene planned to not grant religious accommodation requests and that the religious exemption process was theatre and a charade.

231. Further, Centene's false characterization of employee's religious exemption requests was coercive, prejudicial to each plaintiff, and in retaliation for each asking questions, giving opinions, and seeking a religious exemption.

232. Further, Centene's illusory communications claiming that individualized assessment had occurred for employees were false and were intended to mislead each plaintiff and dissuade each, as well as others similarly situated, from pursuing their rights under Title VII.

233. Plaintiffs' religious beliefs and their protected activity of seeking a religious exemption, answering and asking questions, were the causes of Centene's adverse employment actions against each.

234. By retaliating against each plaintiff for engaging in protected activity Centene has violated Title VII. This violation has harmed and continues to harm each plaintiff.

235. Each Plaintiff has filed charges with the EEOC complaining of these retaliatory and unlawful actions.

236. Wherefore, each plaintiff requests that the Court grant the relief requested in their prayer for relief made under any count contained in this petition.

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

**Count 3**
**VIOLATION OF TITLE VII, 42 U.S.C. § 2000E, ET SEQ.**
**RELIGIOUS DISCRIMINATION— DIRECT AND INDIRECT METHODS**
**EACH PLAINTIFF V CENTENE**

237. To the extent they do not conflict with the allegations contained in this count, Plaintiffs incorporate all other allegations of the Petition as if more fully set forth herein.

238. Pursuant to 42 U.S.C.A. § 2000e-2(a)(1) it is "an unlawful employment practice for an employer. . . to discharge any individual . . . because of such individual's . . . religion."

239. The Supreme Court has observed that this "intentional discrimination provision prohibits certain motives, regardless of the state of the actor's knowledge," *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.,* 575 U.S. 768, 773 (2015), and that "Title VII does not demand mere neutrality with regard to religious practices [of employees]—that they be treated no worse than other practices. Rather, it gives them favored treatment[.]" *Id.* at 775.

240. Therefore, Title VII will support a claim for "reverse religious discrimination: that defendants subjected claimants to discrimination by imposing religious practices and beliefs on claimants." *Equal Opportunity Emp. Comm'n v. United Health Programs of Am., Inc.,* 213 F. Supp. 3d 377, 391 (E.D.N.Y. 2016).

241. "Title VII . . . protects employees from discrimination because they do not share their employer's religious beliefs." *Id.* at 392.

242. In connection with Centene's vaccination mandate, Catherine's immediate supervisor stated he was a Christian and that as a Christian Catherine should adopt his religious beliefs and consent to Covid-19 vaccine injecting.

243. Centene's statements about unvaccinated being responsible for illness or deaths and referral to moral obligations a moral imperative upon Catherine which required each plaintiff to set aside his/her personal religious beliefs on pain and penalty of losing employment which is overtly discriminatory.

244. Title VII prohibits Centene from requiring its employees conform to a religious belief that COVID-19 vaccination is a moral imperative or to its interpretation or version of Theism or Christianity or its interpretation of the Bible.

245. Centene's inhospitable view of the religious beliefs of employees like the plaintiffs who find consenting to COVID-19 vaccine injecting to be morally

**38**

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

objectionable and contrary to their religious practices supports an inference that the plaintiffs were discriminated against based on their respective refusal, on religious grounds, to consent to COVID-19 vaccine injections and due to each applying for religious exemption.

246. Additional evidence of Centene's discrimination and animus towards those unwilling to consent to COVID-19 vaccine injections due to sincerely held religious beliefs is Centene's handling of religious exemption requests in comparison to its treatment of exemption requests based on secular reasons.

247. Centene's discriminatory treatment in the handling of religious exemption requests vis-à-vis medical exemption requests, i.e., favoring medical exemptions while disfavoring religious exemptions, presents a classic case of reverse discrimination.

248. Reliance on a pretextual or insufficient reason for its adverse employment decisions raises an inference of discrimination.

249. Further evidence of Centene's bias and discrimination against the plaintiff is the perfunctory and plainly pretextual reason given every applicant denied a religious exemption.

250. Each Centene employee had unique circumstances relevant to his or her religious accommodation request analysis that should have been undertaken to address their situation. Yet, they were all treated with the same one-size fits all approach by Centene. Thus, this aspect of Centene's Title VII approach was insufficient as well.

251. For example, although Centene employees work for Centene in some compacity, they work in different locations: some work remote while others may be in sales visiting hospitals. Each requesting employee had different job functions. Further, the medical facilities that Centene served had differing patient bases. In fact, some employees such as these plaintiffs had no personal and physical interaction with patients or any other Centene employee. Each of these factors and others impact assessment of the respective accommodation. Yet, Catherine received the same, identical, discriminatory rote reasons for denying her accommodation request. Andrew was given no explanation.

252. The totality of the circumstances related to Centene's cumbersome, chaotic, and confusing religious exemption process also supports an inference of religious discrimination.

Electronically Filed - St. Louis County - September 07, 2022 - 03:23 PM

253. It is apparent that the reason given by Centene for not providing accommodation (i.e., believed that Andrew knowingly ingested medications tested with fetal cells or that Centene believed religion was not the sole reason or not good enough reason or was insincere) was pretextual as Centene did not consider individualized information about Catherine's beliefs or any relevant to risk to any other client or employee.

254. It is reasonable to infer from the totality of the circumstances that Centene did not bother engaging in a meaningful interactive process with those seeking a religious exemption such as Catherine because Centene intended to discriminate against those seeking religious exemptions and never intended to provide them with a reasonable accommodation.

255. Centene and/or the Centene discriminated against each plaintiff by failing to grant her/him a religious exemption and then terminating her/him.

256. Centene discriminated against Catherine declaring, while she was on maternity leave, that terms and conditions of her employment had been changed.

257. By discriminating against each plaintiff because of her/his sincerely held religious beliefs and their decisions to apply for religious exemptions Centene violated Title VII, and these violations have harmed and continues to harm each plaintiff.

258. Centene is fully responsible for the discriminatory conduct of Centene's employees or agents because the Centene permitted them to handle vaccination procedures and the religious exemption process in relation to the Centene' employees and these persons or entities carried out Centene's directive to deny religious accommodation requests.

259. Each Plaintiff filed a charge with the MHRC or EEOC complaining of these unlawful actions.

260. Wherefore, each plaintiff requests that the Court grant them the relief requested including the following: compensation for:

   a. Termination or employee misconduct contained in her personnel file;
   b. Deterioration in job skills;
   c. Lost bonus pay;
   d. Lost seniority;
   e. Loss of preferential shifts and other adverse impacts on working conditions;
   f. Loss of wages; and
   g. Extreme stress and anxiety.

Each plaintiff has suffered the losses and damages described in this petition.

**40**

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

WHEREFORE, the plaintiffs Catherine Hon and Andrew Dietrich request damages, including lost benefits and wages due to maternity leave and their respective terminations, unpaid lost wages due to wrongful discharge or constructive discharge, back pay, reinstatement or front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages, including, but not limited to, damages for pain and suffering, mental and emotional distress, suffering and anxiety, reductions in wages, expenses costs and other damages due to each of the defendant's wrongful conduct; award the plaintiff reasonable attorneys' fees and costs; and grant any other relief that the Court deems just, proper, and equitable.

## JURY TRIAL DEMAND

PLAINTIFFS HEREBY REQUEST A JURY TRIAL

By:/s/Linus L. Baker
Linus L. Baker MO 44980
6732 West 185th Terrace
Stilwell, Missouri 66085-8922
913.486.3913
913.232.8734 (fax)
E-Mail: linusbaker@prodigy.net
Attorney for the plaintiffs

41

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**St. Louis District Office**
1222 Spruce St, Rm 8 100
St Louis, MO 63103
(314) 798-1960
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 08/23/2022

**To:** Mr. Andrew H. Dietrich
5100 Katie Valley Drive
IMPERIAL, MO 63052

Charge No: 560-2022-00307

EEOC Representative and email:    Kenneth Waters
Investigator
Kenneth.Waters@eeoc.gov

### DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 560-2022-00307.

On behalf of the Commission,

David Davis
Acting District Director

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

**Cc:**
Dwight Crawford
Centene
7700 Forsyth
University City, MO 63105

Joseph M Wientge, Jr.
Littler Mendelson, P.C.
600 WASHINGTON AVE STE 900
Saint Louis, MO 63101

Erin Fowler
7700 Forsyth Blvd
Saint Louis, MO 63105

Llinus Baker
Llinus L. Baker Attorney
6732 W 185th Terr.
Stilwell, KS 66085


Please retain this notice for your records.

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

Enclosure with EEOC Notice of Closure and Rights (01/22)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to: https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 560-2022-00307 to the District Director at David Davis, 1222 Spruce St Rm 8 100

St Louis, MO 63103.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue.  After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM



### MISSOURI DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS
# MISSOURI COMMISSION ON HUMAN RIGHTS

| **MICHAEL L. PARSON** | **ANNA S. HUI** | **TIMOTHY FABER, DMin.** | **ALISA WARREN, PH.D.** |
|---|---|---|---|
| GOVERNOR | DEPARTMENT DIRECTOR | COMMISSION CHAIR | EXECUTIVE DIRECTOR |

Catherine A. Hon
1 Morehead Court
Valley Park, MO 63088
*Via Complainant Attorney Email*

### NOTICE OF RIGHT TO SUE

RE:   Catherine A. Hon vs. CENTENE CORPORATION
       E-01/22-53594  28E-2022-00331

The Missouri Commission on Human Rights (MCHR) is terminating its proceedings and issuing this notice of your right to sue under the Missouri Human Rights Act because you have requested a notice of your right to sue.

This letter indicates your right to bring a civil action within 90 days of the date of this notice against the respondent(s) named in the complaint. Such an action may be brought in any circuit court in any county in which the unlawful discriminatory practice is alleged to have occurred, but it must be brought no later than two years after the alleged cause occurred or its reasonable discovery. Upon issuance of this notice, the MCHR is terminating all proceedings relating to the complaint. No person may file or reinstate a complaint with the MCHR after the issuance of a notice of right to sue relating to the same practice or act. You are hereby notified of your right to sue the Respondent(s) named in your compliant in state circuit court. **THIS MUST BE DONE WITHIN 90 DAYS OF THE DATE OF THIS NOTICE OR YOUR RIGHT TO SUE IS LOST.**

You are also notified that the Executive Director is hereby administratively closing this case and terminating all MCHR proceedings relating to it.  This notice of right to sue has no effect on the suit-filing period of any federal claims. This notice of right to sue is being issued as required by Section 213.111.1, RSMo, because it has been over 180 days after the filing of the complaint and MCHR has not completed its administrative processing.

### NO RIGHT TO SUE AS TO RETALIATION FOR REQUESTING ACCOMMODATION(S) BECAUSE OF LACK OF JURISDICTION

The Missouri Commission on Human Rights (MCHR) has determined that it lacks jurisdiction over your allegations of Retaliation/For Requesting Accommodation(s) because retaliation for requesting accommodation(s) isn't an activity protected from Retaliation by the Missouri Human Rights Act. Therefore, MCHR is administratively closing this case with regard to these allegations as well and terminating all MCHR proceedings relating to these allegations.  If you are aggrieved by this decision, then you can appeal by filing a petition under § 536.150 of the Revised Statutes of Missouri in state circuit court. Any such petition must be filed in the Circuit Court of Cole County.

Note:  that if this complaint is dually filed with the Equal Employment Opportunity Commission (EEOC), then the EEOC will process this allegation under federal law. MCHR's determination does not abridge any notice of right to sue you may be entitled to receive from the EEOC.

Respectfully,

Alisa Warren, Ph.D.                                                          <u>July 5, 2022</u>
Executive Director

C:      additional contacts listed on next page

| ☒ | ☐ | ☐ | ☐ |
|---|---|---|---|
| JEFFERSON CITY OFFICE | ST. LOUIS OFFICE | KANSAS CITY OFFICE | SIKESTON OFFICE |
| 421 E. DUNKLIN STREET | 111 N. 7TH STREET, SUITE 903 | P.O. BOX 1129 | 106 ARTHUR STREET, SUITE D |
| P.O. BOX 1129 | ST. LOUIS, MO 63101-2100 | JEFFERSON CITY, MO 65102-1129 | SIKESTON, MO 63801-5454 |
| JEFFERSON CITY, MO 65102-1129 | PHONE: 314-340-7590 | FAX: 816-889-3582 | FAX: 573-472-5321 |
| PHONE: 573-751-3325 | FAX: 314-340-7238 | | |
| FAX: 573-751-2905 | | | |

*Missouri Commission on Human Rights is an equal opportunity employer/program. Auxiliary aides and services are available upon request to individuals with disabilities.*
TDD/TTY:    1-800-735-2966 (TDD)    Relay Missouri: 711
www.labor.mo.gov/mohumanrights       E-Mail: mchr@labor.mo.gov

Electronically Filed - St Louis County - September 07, 2022 - 03:23 PM

RE:   Catherine A. Hon vs. CENTENE CORPORATION
E-01/22-53594  28E-2022-00331

CENTENE CORPORATION
7700 Forsyth Boulevard
Saint Louis, MO 63105
*Via Respondent Contact Email*

Kimberly Yates
Littler Mendleson
600 Washington Avenue, Suite 900
Saint Louis, MO 63101
kyates@littler.com

Linus L Baker
Attorney at Law
6732 W. 185th Terrace
Stilwell, KS 66085
linusbaker@prodigy.net

Electronically Filed - St Louis County - September 07, 2022 - 03:31 PM

# Linus L. Baker
ATTORNEY AT LAW

EFILED

St. Louis County Circuit Court
Attn: Circuit Clerk
Request for Service

Re: Catherine Hon v Centene   22SL-CC03953

Dear Clerk:

Please issue Alias Summons for the following Defendant Centene that includes the name and address of the registered agent on the Alias Summons:

Registered Agent  C T Corporation System
On behalf of Defendant Centene
C T Corporation System
120 South Central Ave
Clayton, MO 63105

Thank you for your assistance in this matter

/s/Linus L. Baker

Linus L. Baker   MO 44980
6732 West 185th Terrace
Stilwell, KS  66085-8922
Telephone: 913.856.6437
Fax:        913.232.8734
E-Mail: linusbaker@prodigy.net

I certify and attest that the above is a true copy of the original record of the Court in case number 22SL-CC03953 as it appears on file in my office.

Issued

9/20/22

**JOAN M. GILMER**, Circuit Clerk
St. Louis County Circuit Court

By _____
Deputy Clerk

CCOPR36   Rev. 06/00